[No. G004315. Fourth Dist., Div. Three. Aug. 29, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
HA VAN NGUYEN, Defendant and Appellant.

182

---

**COUNSEL**

Roberta K. Thyfault, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jay M. Bloom, Holly D. Wilkens, and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**CROSBY, J.**—Ha Van Nguyen was convicted by jury of robbery in one incident and attempted murder, robbery, and assault with a deadly weapon

in a second.[1] An armed-with-a-firearm allegation relating to the first robbery was found to be true, and both armed and use enhancements were sustained with respect to the second robbery and the attempted murder. In a bifurcated hearing conducted after the jury returned its verdicts, the trial court found Nguyen committed all the crimes while on bail for yet another robbery. Nguyen argues evidentiary, instructional, and sentencing errors require reversal. The sentencing issues he raises relating to multiple firearm and multiple crime-bail-crime enhancements do have merit, but the remaining contentions do not.

## I

On September 14, 1984, Nguyen and two accomplices, one of whom was armed with a gun, robbed a store clerk in Orange County. The trio took cash from the register and employees' purses.

Nguyen committed a robbery in Los Angeles County two months later. He was apprehended for this offense, but released on bail pending trial.

On March 2, 1985, Nguyen and an accomplice, both armed, entered a Santa Ana market. The confederate escorted the clerk into a rear bathroom, took money and a passport from his pockets, and forced him to lie face down on the floor. Nguyen remained in the front and opened the cash register. The victim heard Nguyen shout a Vietnamese battle phrase used when "someone was to kill or be killed." Nguyen's crime partner then kicked the clerk in the ribs and shot him in the back, fortunately not fatally.

In the meantime, the clerk's wife entered the market and saw Nguyen removing money from the register; his gun was on the counter. She screamed, and Nguyen attempted to pull her inside. She broke free, however, and ran for help. As she looked back, a car with several men inside was pulling away. One pointed a gun and threatened to kill her.

Nguyen was taken into custody on March 27, 1985, and convicted of the Los Angeles County robbery the following week. He was tried for the Orange County episodes in 1986. No physical evidence tied him to either robbery, and his defense centered on attacking the reliability of the eyewitness identifications and establishing alibis. Nguyen did not testify. Friends placed him elsewhere during both incidents; but they were heavily impeached on times, places, and personal bias.

---

[1] We have no way of knowing if defendant's surname is Ha or Nguyen. We utilize the English style, although we are aware the Vietnamese custom is the opposite.

## II

 Nguyen first challenges the denial of his motion to exclude evidence of the Los Angeles County robbery conviction for impeachment purposes, contending the failure of the judge to indicate on the record that he specifically considered the four factors outlined in *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] precludes meaningful appellate review.[2] There is no such duty in the usual case, however. (*People* v. *Payne* (1988) 202 Cal.App.3d 933 [249 Cal.Rptr. 67].)

 In arguing the motion, Nguyen's counsel correctly explained article I, section 28, subdivision (f) of the California Constitution did not eliminate trial court discretion to exclude prior felony convictions involving moral turpitude. (*People* v. *Castro* (1985) 38 Cal.3d 301, 312-313 [211 Cal.Rptr. 719, 696 P.2d 111].) He discussed *Beagle* and urged the court to use its enumerated factors as guidelines in the weighing process.[3] In addition to the obvious prejudice were the jury to learn he had been recently convicted of the identical crime, defense counsel claimed admission of the prior *might* prevent presentation of alibi defenses on at least one of the charged robberies; but he failed to make a specific offer of proof on the point. As it turned out, he was able to produce an alibi defense for both incidents despite Nguyen's decision not to testify.

The prosecutor claimed a then recent Court of Appeal opinion, *People* v. *Stewart* (1985) 171 Cal.App.3d 59 [215 Cal.Rptr. 716], "makes clear that the old parameters set forth in *Beagle* are no longer applicable."[4] The court

---

[2] Although Nguyen did not testify, the issue has been preserved on appeal. His trial predated the Supreme Court's decision in *People* v. *Collins* (1986) 42 Cal.3d 378, 388-389 [228 Cal.Rptr. 899, 722 P.2d 173], which prospectively adopted the federal rule (*Luce* v. *United States* (1984) 469 U.S. 38, 43 [83 L.Ed.2d 443, 448, 105 S.Ct. 460]). Under *Luce* only a defendant who testifies may contest a decision to permit impeachment with evidence of a prior felony conviction.

[3] The *Beagle* factors are well known. They include a consideration of whether the prior conviction reflects on the defendant's honesty and integrity, is near or remote in time, and was suffered for the same or substantially similar conduct for which the defendant is on trial. Also, the court should consider the effect on the defendant's decision whether to testify. (6 Cal.3d at p. 453; see also *People* v. *Castro, supra,* 38 Cal.3d 301, 307.)

In *People* v. *Collins, supra,* 42 Cal.3d at p. 392, the Supreme Court confirmed those factors should be viewed "as guiding rather than restraining the discretion of trial courts . . . ." Nonetheless, they must be included in the weighing of probative value versus prejudice: "The factors that the trial court should consider in exercising that discretion are, to begin with, those noted in *People* v. *Beagle, supra,* 6 Cal.3d at pages 453-454. Properly understood, those factors remain relevant to any application of section 352 even after the adoption of section 28(f)." (*Id.,* at p. 391.)

[4] Published after *Castro* but before *Collins,* the *Stewart* opinion questioned the continuing role of the *Beagle* factors, labeling *Castro's* discussion on the point "dicta, or observations unnecessary to the court's decision to affirm the judgment." (171 Cal.App.3d at pp. 64-65.)

made no detailed finding on the *Beagle* debate and denied Nguyen's motion, stating simply, "I want the record to show the court is exercising its discretion under 352 of the Evidence Code and feels the probative value outweighs the prejudice."

Despite its brevity, the record here satisfies us the court properly fulfilled its role under *Castro* and *Collins*. When a motion to exclude evidence under Evidence Code section 352 is made, "the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value . . . ." (*People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468].) Nevertheless, as the Supreme Court has explained, "*Green* does not require that the trial court engage in an on-the-record evaluation of the factors affecting the weighing process . . . . To make such a showing it may be sufficient if the court simply recites that its conclusion was the result of a weighing process." (*People* v. *Holt* (1984) 37 Cal.3d 436, 453 [208 Cal.Rptr. 547, 690 P.2d 1207].)

We recognize, as did the Supreme Court in *Holt*, that there may be instances where a mere reference to the weighing process is insufficient. This is not that case, however. Robbery is indisputably a crime of moral turpitude, and prejudice to Nguyen was unavoidable once the jury was advised he had previously been convicted of that offense. The judge's task, although difficult, was clear: He had to determine whether Nguyen demonstrated the prejudice of being impeached with a crime identical to two of those charged would outweigh the probative value of the evidence. We are satisfied the judge did what he said he did; and because Nguyen does not attack the ruling on its merits, we have no need to examine the matter further.

## III

Nguyen claims the court improperly instructed the jury on the issue of an aider and abettor's guilt. Under the circumstances of this case, however, there was no error.

The court read CALJIC No. 3.00, Fourth edition 1984. The pertinent portion then provided, "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged." This version of the instruction, as well as CALJIC No. 3.01, was formulated in response to *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318].

When it came time to analyze the robbery convictions at issue, however, the *Stewart* court clearly considered those factors. (*Id.,* at p. 66.)

Criticism of the new language was not long in coming, however. In *People* v. *Hammond* (1986) 181 Cal.App.3d 463 [226 Cal.Rptr. 475], the court noted, "we believe the pattern instruction given, standing alone, is potentially ambiguous in its failure to adequately inform the jury of its fact-finding function in determining the question of vicarious liability for the unplanned related offense. Thus, while the jury need only find that defendant knowingly and intentionally facilitated or encouraged the planned offense (robbery), whether the crime charged (attempted murder) was in fact a natural and probable consequence of the planned offense was for the jury to decide. [Citations.]" (*Id.,* at p. 469, fn. omitted.) The court then suggested the instruction could be improved by "clarifying the jury's related responsibility to determine whether the act committed was in fact a natural and probable consequence of the criminal act knowingly and intentionally encouraged."[5] (*Ibid.*) Nevertheless, the court fell short of finding error, holding it would be harmless under the facts of that case in any event.

Standing alone, the instruction does not misstate the law. At worst, it is incomplete and may under some circumstances result in the jury being misinformed regarding the duty to find what is a natural and probable consequence of the planned offense. But instructions should not be viewed in a vacuum. Our Supreme Court recently explained in a similar context that "[t]he compelling implication . . . is that instructions such as those given here are not crucially erroneous, deficient, or misleading on their face, but may become so in particular circumstances. [Citation.] When the issue is not whether erroneous instructions have been cured by argument, but whether the interplay of argument with individually proper instructions produced a distorted meaning, it seems appropriate to evaluate the remarks of both counsel to determine whether the jury received adequate information." (*People* v. *Brown* (1988) 45 Cal.3d 1247, 1256 [248 Cal.Rptr. 817, 756 P.2d 204].)

We need look no further than the prosecutor's closing argument to conclude the jury was adequately informed notwithstanding the claimed inadequacies of CALJIC No. 3.00. The deputy district attorney told the jurors in argument to decide whether the attempted murder of the market clerk was a natural and probable consequence of the robbery.[6] Moreover, this was not a case where many reasonable persons could have entertained much doubt

---

[5]The 1987 revision of CALJIC No. 3.00 adopted the change suggested by *Hammond:* "It is for you, the jury, to determine . . . whether the crime charged was a natural and probable consequence of the criminal act knowingly and intentionally encouraged." That an instruction can be improved does not mean it is erroneous, however.

[6]"[I]f you believe that they were both there to commit a robbery, and *if* you believe that, as I said a moment ago, one of the natural and probable consequences of committing a robbery with guns, with loaded guns, is that somebody is going to get shot, you can find aiding and abetting on that theory also." (Italics added.)

on that issue. (Cf. *People* v. *Garewal* (1985) 173 Cal.App.3d 285, 296-303 [218 Cal.Rptr. 690] [returning resident surprised unarmed daylight burglars and accomplice brutally assaulted her with a brick, punches, and kicks].) Nguyen entered a market for the purpose of robbery with a confederate toting a loaded gun and later shouted a word which probably played a role in causing him to shoot the victim, very dangerous behavior indeed. Considering the instruction, the prosecutor's argument, and the strength of the evidence, we are satisfied the jury understood its mission and completed it properly. Assuming the instruction is incomplete, there was no harm in this case. (*Rose* v. *Clark* (1986) 478 U.S. 570, 578-579 [92 L.Ed.2d 460, 471, 106 S.Ct. 3101, 3106-3107].)

## IV

■ Nguyen next argues the court violated Penal Code section 654 by imposing consecutive sentences for the attempted murder and March 2, 1985, robbery.[7] Almost 30 years ago, the Supreme Court explained the rule as follows: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [¶] Thus in *People* v. *Logan* [1953] 41 Cal.2d 279, 290 [260 P.2d 20], defendant, who chose to commit robbery by first knocking out his victim with a baseball bat and then taking his valuables was convicted of both robbery and assault. We reversed the assault conviction on the ground that the double punishment violated section 654.[8] In *In re Chapman* [1954] 43 Cal.2d 385, 387 [273 P.2d 817], however, we held that when the assault is not a means of perpetrating the robbery but is an act that follows after the robbery is completed the defendant is guilty of two punishable acts." (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19-20 [9 Cal.Rptr. 607, 357 P.2d 839].)

The clarity of these examples has been somewhat obscured by the Supreme Court's more recent formulations, however: "If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) If, on the other hand, "the [defendant] entertained multiple criminal objectives which were independent of and

---

[7] Penal Code section 654 provides in part, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

[8] Modern practice is to stay the sentence on one count pending completion of the sentence on the second. (*People* v. *Miller* (1977) 18 Cal.3d 873, 886 [135 Cal.Rptr. 654, 558 P.2d 552].)

not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].)[9]

 The jury's finding discussed in the previous section, that the shooting was a natural and probable consequence of the robbery, determined only that Nguyen was an aider and abettor in the attempted murder. It in no manner foreclosed the trial court's conclusion that the act of violence was sufficiently divisible from the robbery to justify multiple punishments. That a shooting may have been foreseeable, or even probable, does not mean it was necessary or useful in effectuating the robbery or that it was committed for that purpose. For example, discharging a gun is likely to attract attention; immobilizing a victim by tying him up is not.

Here, substantial evidence supports the court's implied finding of divisibility. While Nguyen remained at the store's till, his crime partner took the victim into a back room, relieved him of his valuables, and then forced him to lie on the floor in an obvious attempt to forestall any resistance. Only after the clerk assumed that position did Nguyen's accomplice shoot him.

This act constituted an example of gratuitous violence against a helpless and unresisting victim which has traditionally been viewed as not "incidental" to robbery for purposes of Penal Code section 654. (E.g., *People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569] [robber shot one victim in the back for no apparent reason while another victim opened safe]; *People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869] [robber shot victim for looking at him strangely]; *People* v. *Chapman, supra,* 43 Cal.2d at 387 [assault following robbery]; *In re Jesse F.*

---

[9] Digressing briefly, we note Penal Code section 654 can pose a unique sentencing problem in cases where the defendant has been convicted of multiple offenses committed closely in time. Facts concerning the divisibility of the defendant's course of conduct and his criminal objectives need not be pleaded or proved. Because these facts would often be prejudicial or, as here, irrelevant on the question of guilt, there is generally no motivation to present all the evidence necessary to determine whether section 654 will preclude multiple punishments. Consequently, the trial court is often required to make these findings on an inadequate record.

We see no reason why a party or the court could not ask the jury for special verdicts on the facts pertinent to section 654 issues and in a bifurcated proceeding in appropriate cases. (Compare *People* v. *Ross* (1988) 201 Cal.App.3d 1232, 1239-1240 [247 Cal.Rptr. 827] with *People* v. *Raby* (1986) 179 Cal.App.3d 577, 582, fn. 1 [224 Cal.Rptr. 576]; see also *People* v. *Perez, supra,* 23 Cal.3d 545, 552, fn. 5 and *People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1055 [216 Cal.Rptr. 865].) We do agree, at a minimum, that posttrial evidentiary hearings during the sentencing process should be used, upon request, where the trial record is inadequate to determine the applicability of section 654. (*Ross, supra,* at pp. 1240-1241.) In this case no such hearing was sought by either party.

(1982) 137 Cal.App.3d 164 [186 Cal.Rptr. 841] [victim assaulted after robbery while attempting to escape from assailants]; *People* v. *Williamson* (1979) 90 Cal.App.3d 164 [153 Cal.Rptr. 48] [victims assaulted after money already taken and gun put away]; *People* v. *Hopkins* (1975) 44 Cal.App.3d 669 [119 Cal.Rptr. 61] [victim struck after she was tied up]; *People* v. *Johnson* (1969) 270 Cal.App.2d 204 [75 Cal.Rptr. 605] [robber gratuitously fired gun at victim during flight from scene].)

The defense nevertheless argues Penal Code section 654 bars multiple sentences here because the facts suggest the clerk was shot in order to eliminate him as a witness or to facilitate the assailants' escape. Perhaps; but at some point the means to achieve an objective may become so extreme they can no longer be termed "incidental" and must be considered to express a different and a more sinister goal than mere successful commission of the original crime. ■ We should not lose sight of the purpose underlying section 654, which is "to insure that a defendant's punishment will be commensurate with his culpability." (*People* v. *Perez, supra,* 23 Cal.3d at p. 552; *Neal* v. *State of California, supra,* 55 Cal.2d at p. 20.)

■ *People* v. *Harris* (1984) 36 Cal.3d 36 [201 Cal.Rptr. 782, 679 P.2d 433], certiorari denied 469 U.S. 965 [83 L.Ed.2d 301, 105 S.Ct. 365], does contain language supporting Nguyen's argument, but it is unpersuasive. There, robbers entered a home, bound the residents, ransacked the premises, and then fatally stabbed the victims. A plurality of the court (Broussard, J., with Bird, C. J., and Reynoso, J., concurring) concluded, without discussion, "To accomplish that objective [robbery], defendant and his companions entered the apartment of the victims, committed the robbery, and murdered the victims to avoid detection. Were this not a case involving special circumstances, the prohibition against double punishment would be clearly applicable." (*Id.,* at p. 65.)

The quoted passage was both dictum and did not command a majority of the court. It is, consequently, not binding on us. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, p. 753.) And we disagree with the three justices on the point: It is one thing to commit a criminal act in order to accomplish another; Penal Code section 654 applies there. But that section cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense. Once robbers have neutralized any potential resistance by the victims, an assault or attempt to murder to facilitate a safe escape, evade prosecution, or for no reason at all, may be found by the trier of fact to have been done for an independent reason.

We have also examined *People* v. *Lowe* (1975) 45 Cal.App.3d 792 [119 Cal.Rptr. 699], cited in support of the plurality's section 654 discussion in

*Harris,* and *People* v. *Green* (1979) 95 Cal.App.3d 991 [157 Cal.Rptr. 520]. In *Lowe* the court held section 654 applied to a robbery and attempted murder arising out of the same incident. But the facts were not discussed, and we cannot determine from the opinion exactly how or why the victim was shot. Thus, *Lowe* is fragile support for the *Harris* dictum.

We simply disagree with *Green.* There, the victim was accosted by several men as she approached her parked van. They forced her to drive as they rifled her purse and threw her from the vehicle as it sped down the freeway. The defendant was convicted of robbery, kidnapping, and attempted murder. The appellate court found Penal Code section 654 applicable but failed to discuss whether the apparently unnecessary violence which accompanied the robbery, i.e., kidnapping and jettisoning the victim from a moving vehicle, justified multiple punishments because the Attorney General conceded those offenses "were part of one indivisible transaction [in which] the primary criminal objective of each defendant was to rob the victim of her purse and vehicle." (95 Cal.App.3d at p. 1008.)

Arguably, once the victim in *Green* was in the vehicle, the robbery, insofar as it was based on the taking of the automobile, could be accomplished only by her removal. But the superior court had more than ample reason to find it was unnecessary to subject the victim to that particular peril in the first place: The robbers could have taken her purse and keys and left her in the parking lot. The trial court also had ample grounds to conclude the attempt to murder was not necessary, or even helpful, to the commission of either the robbery or kidnapping. The perpetrators were far more likely to attract attention by the means they selected to separate themselves from the victim.

The offenses in *Green* were in the same course of conduct only in the sense that they occurred seriatim. We would not overturn a finding that none of them was incidental to any of the others, except, perhaps, the kidnapping and robbery as they related to the theft of her personal property. To the extent *Green* stands for the proposition that a sentence for assault on a robbery victim to evade apprehension and prosecution may not be imposed along with the sentence for the robbery itself, we cannot agree. (*People* v. *Cardenas, supra,* 31 Cal.3d 897.)

The present case more closely resembles *People* v. *Foster* (1988) 201 Cal.App.3d 20 [246 Cal.Rptr. 855] and *In re Jesse F., supra,* 137 Cal.App.3d 164; both support our position. In *Foster* the defendants were convicted of robbery and false imprisonment and sentenced to consecutive terms for those offenses. The Court of Appeal rejected the claim that Penal Code section 654 barred separate punishment on the false imprisonment

counts: "The imprisonment of the victims occurred *after* the robbers had obtained all of the money, and therefore was not necessary or incidental to committing the robbery. Locking the victims in the store cooler was potentially dangerous to their safety and health. It is . . . distinguishable from an assault which is merely incidental to robbery. [Citations.]" (*Foster, supra,* at pp. 27-28.)

In *Jesse F.,* the victim was robbed and forced to lie on the ground by his car. He got up and attempted to run away, but was brutally assaulted. The appellate panel agreed consecutive sentences for the robbery and attempted murder did not violate section 654: "The fruits of the robbery were theirs and their escape was apparently assured. Their attempt to murder [the victim] as he fled constituted a separate act not necessary to effectuate the robbery. . . . [¶] [Even though] the crime of robbery is not actually complete until the robber 'has won his way to a place of temporary safety' . . . it cannot mean every act a robber commits before making his getaway is incidental to the robbery." (*In re Jesse F., supra,* 137 Cal.App.3d at p. 171.)

Bluntly stated, Penal Code section 654 has not been applied consistently. We believe it is reasonably clear, however, that a separate act of violence against an unresisting victim or witness, whether gratuitous or to facilitate escape or to avoid prosecution, may be found not incidental to robbery for purposes of section 654. If the trier of fact determines the crimes have different intents and motives, multiple punishments are appropriate. This is so notwithstanding that for purposes of the felony-murder rule the robbery is still considered to be ongoing. Intent and motive are not at issue in that situation, beyond proof of an intent to rob; and legal fictions surrounding application of the felony-murder rule should have nothing to do with sentencing choices in cases where the victim survives and the one offense does not constitute an element of another.

V

Nguyen's next contention has merit. The trial court purported to impose consecutive sentences for two firearm use enhancements for the robbery and attempted murder of the clerk under Penal Code section 12022.5. The threshold error, as the Attorney General conceded during oral argument, is that Nguyen did not shoot the victim; his partner did. Use enhancements, as the label implies and as opposed to armed enhancements, require personal use.[10]

---

[10] Penal Code section 12022.5, subdivision (a) provides, "Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for two years, unless use of a firearm is an element of the offense of which he or she was convicted."

Here, the evidence supports a finding of Nguyen's *use* of a firearm during the robbery but not the attempted murder. (See *People* v. *Walker* (1976) 18 Cal.3d 232, 241-242 [133 Cal.Rptr. 520, 555 P.2d 306].) Nonetheless, the evidence *is* sufficient to establish Nguyen was vicariously *armed* with a gun when the victim was shot, as the jury found. Accordingly, we must so modify the finding on the attempted murder count. (Pen. Code, §§ 12022, subd. (a), 1181, subd. 6; see *People* v. *Hays* (1983) 147 Cal.App.3d 534, 549-550 [195 Cal.Rptr. 252].) ▇ In addition, we must stay the use enhancement on the subordinate robbery sentence. The single occasion rule of *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23] bars imposition of sentence for more than one weapons enhancement, whether for being armed or a use, in any given "melee."

In *Culbreth* a bare majority of the Supreme Court determined there could be only one sentence enhancement for use of a firearm where multiple crimes are "all part of a single *melee* [and] [t]here was but one occasion, one intent, one objective, one indivisible transaction."[11] (17 Cal.3d at p. 335, italics added.) Although the issue has not been the subject of any in-depth analysis that we have discovered, one appellate court has applied the *Culbreth* rule where both armed and use allegations were the result of a single criminal episode. (*People* v. *Jordan* (1984) 155 Cal.App.3d 769, 784 [203 Cal.Rptr. 172].) The assumption that *Culbreth* controls under this circumstance is consistent with the view that the legislative purpose of a firearm enhancement, whether it be for use or for being armed, is deterrence through the imposition of additional punishment for each separate occasion of the proscribed act. (*In re Culbreth, supra,* 17 Cal.3d at p. 333.) Accordingly, if the robbery and attempted murder constituted but one "melee," Nguyen's sentence may be enhanced only once, regardless of the dual armed and use findings.

Did the robbery and attempted murder of the clerk constitute but one "melee"? As we noted in *Raby,* "where a defendant has been convicted of more than one violent felony involving the same victim, courts usually have little difficulty in finding a single occasion of gun use and have imposed but one sentence enhancement. (E.g., *People* v. *Prysock* (1982) 127 Cal.App.3d 972 [180 Cal.Rptr. 15]; *People* v. *Ramirez* (1979) 93 Cal.App.3d 714 [156 Cal.Rptr. 94].)" (*People* v. *Raby, supra,* 179 Cal.App.3d at p. 586.) This is so even though multiple punishments for the underlying offenses are *not*

---

[11] We have previously expressed our frustration with *Culbreth*. It has generated considerable confusion among appellate courts as to the number of findings of firearm use that are permissible for a single criminal episode. (Compare *People* v. *Raby, supra,* 179 Cal.App.3d 577, 585 [multiple findings appropriate, but only one unstayed sentence] with *People* v. *Jordan* (1984) 155 Cal.App.3d 769, 785 [203 Cal.Rptr. 172] [only a single finding possible for each occasion of gun use].) Also, in our view it operates to punish those with a lesser criminal intent more severely than those who harbor more sinister objectives. (*Raby, supra,* at p. 590.)

barred by Penal Code section 654. (See, e.g., dicta in *Prysock, supra,* at p. 1004.)

*People* v. *Cardenas, supra,* 31 Cal.3d 897 is instructive on this point. There, the trial court imposed consecutive sentences for attempted murder and attempted robbery, each enhanced by a finding of firearm use. The robbery sentence was also enhanced with a term for infliction of great bodily injury. A sentence for assault with a deadly weapon was stayed per Penal Code section 654.

The defendant's convictions were reversed for evidentiary error, but the Supreme Court discussed sentencing issues to assist the court on retrial. No criticism was made of the imposition of consecutive sentences for the attempted murder and attempted robbery, nor of the consecutive enhancements for great bodily injury and use of a firearm.[12] *Cardenas* did hold, however, in light of the prosecution's concession that the offenses were committed in an " 'indivisible transaction,' " only one firearm use enhancement was proper. (31 Cal.3d at p. 913.) A similar result should pertain here.

Although the Attorney General vigorously argues the robbery and attempted murder were not part of a continuous course of conduct for *Culbreth* purposes, we find no evidence to support his contention. Nguyen was one-half of a robbery duo with apparently assigned functions: He was to clean out the cash register while his cohort ushered the solitary victim from the immediate area and divested him of his personal valuables. The episode obviously falls within the broad rubric of a single melee. Thus, the presence of a gun can result in only one enhanced punishment based on a firearm allegation. The abstract of judgment must be modified accordingly.

## VI

The court also erred in imposing sentences on multiple crime-bail-crime enhancements pursuant to Penal Code section 12022.1. The propriety of multiple enhancements of this sort for offenses committed on a single occasion was resolved in *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal. Rptr. 567, 679 P.2d 1]: "Section 1170.1 refers to two kinds of enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense. Enhancements for prior convictions—

---

[12] At first blush, the case is different from the present one in an important particular: There were three potential robbery victims in *Cardenas.* However, a close reading of the facts persuades us that the victim of the attempted murder was the victim of the only charged count of attempted robbery. The great bodily injury allegation attached to the latter count, and only one person was injured. Although the defense apparently did not raise the Penal Code section 654 issue as it related to the substantive counts, it is difficult to resist the thought that the Supreme Court would have noted a problem, if any it had, with the imposition of punishment for both attempted robbery and attempted murder.

authorized by sections 667.5, 667.6 and 12022.1—are of the first sort. The second kind of enhancements—those which arise from the circumstances of the crime—are typified by sections 12022.5 and 12022.7: was a firearm used or was great bodily injury inflicted? Enhancements of the second kind enhance the several counts; those of the first kind, by contrast, have nothing to do with particular counts but, since they are related to the offender, *are added only once as a step in arriving at the aggregate sentence.*" (*Id.,* at p. 90, italics added.) Imposition of crime-bail-crime enhancements does not depend on the number of offenses charged in the information. Like a prior conviction, it may be added only once to the defendant's sentence.

The abstract of judgment is ordered modified to provide only one term of imprisonment per Penal Code section 12022.1 and by striking the Penal Code section 12022.5 finding on the attempted murder sentence, the base term, replacing the latter with a consecutive armed enhancement pursuant to Penal Code section 12022, subdivision (a). The Penal Code section 12022.5 enhancement with respect to the consecutive robbery term is stayed pending completion of the sentence on the principal term at which time the stay shall become permanent. As modified, the judgment is affirmed.

Scoville, P. J., and Sonenshine, J., concurred.

**SCOVILLE, P. J., and SONENSHINE, J.**—We concur in the majority opinion but write separately to clarify a possible ambiguity regarding the proper scope of Penal Code section 654. Our holding is narrow: A robber may not avoid multiple punishment when harming an unresisting victim or witness in an act extraneous to the objective of robbery. But reliance on *People* v. *Foster* (1988) 201 Cal.App.3d 20 [246 Cal.Rptr. 855] suggests a temporal view of section 654, i.e., acts committed before the taking of the property are insulated from separate punishment while anything done after that moment is not. In reality, gratuitous violence often occurs before the robber takes the loot; and certain later acts, such as those which facilitate escape from the scene, may sometimes be inextricable from the robbery.

Here, the attempted murder of the store clerk was too extreme to serve the purpose of escape. And, elimination of a witness is not an objective related to robbery.

A petition for a rehearing was denied September 27, 1988, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 23, 1988. Mosk, J., was of the opinion that the petition should be granted.