[No. F014235. Fifth Dist. Mar. 9, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DEWEY GENE SAFFLE, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

## COUNSEL

Andrew Cappelli, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Shirley A. Nelson and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUCKLEY, J.**—Dewey Gene Saffle was convicted by trial of count one, sodomy, a violation of Penal Code section 286, subdivision (c);[1] count two, foreign object penetration, a violation of section 289, subdivision (a); count three, false imprisonment, a violation of section 236; count four, assault with a deadly weapon, a violation of section 245, subdivision (a) and a weapon use enhancement within the meaning of section 12022, subdivision (b) as to the first three counts.

Saffle was sentenced to the upper term of eight years on count one, the upper term of eight years on count two and to the upper term of three years on count three designated as the principal term. The sentences imposed on these counts were ordered to run fully consecutive. He was sentenced to an additional one year for each of the weapons use enhancements charged in counts one through three for an aggregate term of twenty-two years. Saffle received the upper term on count four, which sentence was stayed pursuant to section 654.[2]

### FACTS

In August 1988, Kristi A. resided with Saffle's brother, Tommy, her two young daughters and with Saffle, who had moved in and was staying with them temporarily.

In the early morning hours of August 28, 1988, Kristi was at home sleeping on the couch. Her younger daughter Ashley was also in the house. Saffle knocked on the door and told Kristi he wanted to get some clothing. He went into the bedroom and then returned to the room where she was on the couch.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Count four is not germane to the issues raised on appeal.

Saffle suddenly jumped on top of Kristi, held a knife to her throat, told her not to scream and to take off her clothes. Ashley began to cry; Saffle ordered Kristi to "shut her up." Kristi asked Saffle not to hurt them, whereupon he told her to shut up and do as he said. Saffle started to lift up her nightgown and then told her to go into the bedroom. She complied and Saffle followed her there.

With the knife in his hand, Saffle ordered Kristi to lie down on the bed and then ordered her to turn over on her stomach. After she did so, Saffle took off her nightgown and pulled her underwear off. Holding the knife to Kristi's throat, he put his finger in her anus. She asked Saffle to stop; he told her to "shut up." With the knife still at her throat, Saffle then removed his finger and inserted his penis into her anus. Saffle continued sodomizing Kristi until Ashley started screaming. Kristi was ordered to "shut her up." She managed to calm her daughter whereupon Saffle continued sodomizing her.

At that point, someone began knocking on the apartment door. Saffle told Kristi he thought it was the police and would not allow her to answer the door. He then told her he was sorry, but said that if she told anyone, he would kill her and her children; he would "make it worth his while to do 20 years." Since Saffle was still holding the knife, she believed his threats. The knocking continued, so Saffle finally agreed to let her answer the door. Two men with whom Kristi was acquainted were at the door; however, she did not tell them what had happened because of the threats made to her.

Kristi stayed in the apartment for a few days after the attack. During that time, Saffle threatened her on two more occasions with a knife. She then moved out of the apartment and told Saffle's brother Tommy what had happened. Several days later, she reported the attack to the police.

DISCUSSION

All of the errors cited by Saffle on appeal involve sentencing issues. We address them in the order raised by the briefs.

I

*Was the False Imprisonment Offense Divisible From the Sex Offenses?*

Saffle argues that the false imprisonment of Kristi was committed for the purpose of committing the sex offenses and the court violated section 654 by imposing punishment for that conviction. The People respond that the

crime of false imprisonment followed the completion of the sexual acts and was to prevent Saffle's detection as the attacker. Thus the People assert section 654 is not applicable here. Section 654 provides:

"An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

■ Section 654 applies when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction. (*People* v. *Maese* (1980) 105 Cal.App.3d 710, 726 [164 Cal.Rptr. 485].) The purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability. (*People* v. *Perez* (1979) 23 Cal.3d 545, 550-551 [153 Cal.Rptr. 40, 591 P.2d 63].) Whether a course of criminal conduct is a divisible transaction which could be punished under more than one statute within the meaning of section 654 depends on the intent and objective of the actor. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905].)

The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial. (*People* v. *Murphy* (1980) 111 Cal.App.3d 207, 213 [168 Cal.Rptr. 423].) The factual finding that there was more than one objective must be supported by substantial evidence. (*People* v. *Macias* (1982) 137 Cal.App.3d 465, 470 [187 Cal.Rptr. 100].)

Saffle cites *People* v. *Failla* (1966) 64 Cal.2d 560 [51 Cal.Rptr. 103, 414 P.2d 39] and *People* v. *Martinez* (1980) 109 Cal.App.3d 851 [167 Cal.Rptr. 477] as precluding divisibility here. In *Failla*, the victim was in her bedroom and a roommate was asleep in an adjacent bed. The defendant, after gaining entry to the house, instructed the victim to be quiet and to go to the next room. The victim followed instructions and went into the next room where the defendant exposed himself. The court held the defendant's course of conduct after he first accosted his victim comprised an indivisible transaction. The technical kidnapping of the victim was intended merely to take her out of the presence of her roommate so the defendant could pursue his sexual purpose in the adjoining room without fear of interruption. Accordingly, both the kidnapping and the sexual misconduct were incident to one objective and double punishment was prohibited. (64 Cal.2d at p. 570.)

In *Martinez*, the defendant had been convicted of two offenses, assault with intent to commit rape and false imprisonment by use of force and violence. The defendant had assaulted his victim, dragged her under a bridge and after he desisted from his attempted rape, held her for a few moments to attempt to convince her not to complain to the police. The court held that these actions involved the same criminal event and, pursuant to section 654, only one sentence could be served for that sequence of events. (109 Cal.App.3d at p. 858.)

The People contend the sexual attacks were completed at the time of the false imprisonment, and that Saffle is guilty of a separately punishable act, citing *People* v. *Nguyen* (1988) 204 Cal.App.3d 181 [251 Cal.Rptr. 40]. In that case Nguyen and an accomplice, both armed, entered a market. The accomplice escorted the clerk to a rear bathroom and forced him to lie face down on the floor. Nguyen remained in the front of the market and opened the cash register. Nguyen's crime partner shot the clerk in the back. Nguyen argued the trial court had violated section 654 by imposing consecutive sentences for attempted murder and for the robbery. The court noted that acts constituting gratuitous violence against a helpless and unresisting victim have traditionally been viewed as not incidental to robbery for purposes of section 654. (204 Cal.App.3d at p. 190.) *Nguyen* recognized that section 654 had not been applied by the courts consistently. However, the court believed it to be reasonably clear that a separate act of violence against an unresisting victim or witness, whether gratuitous or to facilitate escape or to avoid prosecution, may be found not incidental to robbery for purposes of section 654. If the trier of fact determines the crimes have different intents and motives, multiple punishments are appropriate. (204 Cal.App.3d at p. 193.)

Saffle makes a compelling argument that the victim here did not suffer any additional injury, nor did the act of false imprisonment represent gratuitous violence against an unresisting victim. Initially, the facts here appear more analogous to *People* v. *Martinez, supra,* 109 Cal.App.3d 851, than to *People* v. *Nguyen, supra,* 204 Cal.App.3d 181. However, unlike the victim in *Martinez*, Kristi, after the sexual offenses were completed, was subjected to threats of future bodily injury to herself and her children by the knife-wielding Saffle. While lacking the overt gratuitous violence of *Nguyen*, the conduct displayed by Saffle was, in some ways, more fraught with terror and implicit violence. We perceive a critical distinction between a situation (*Martinez*) where a person is held for a few moments in an attempt to convince her not to complain to the police and a situation where a victim is

restrained while being threatened with future violence to herself and her children if she reports the crimes.

Here, once the sexual offenses were completed, Saffle's objective changed. He was no longer interested in fulfilling a sexual objective; he was seeking to prevent Kristi from reporting the incident. This act, constituting an attempt to dissuade a victim from reporting a crime, under the attendant circumstances, could have been separately charged as a violation of section 136.1, subdivisions (a)(2) and (c)(1).[3]

"On the other hand, when an accused has embarked upon a course of conduct wherein he may be deemed to have entertained multiple criminal objectives none of which are merely incidental to any other, the meaning of 'act or omission' has been construed in a manner consistent with that multiple objective and what may appear on the surface to be a single act may embody separately punishable violations. We must, accordingly, give heed to an accused's objectives when they can be ascertained. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People* v. *Beamon, supra*, 8 Cal.3d 625, 638-639.)

It was to further the objective of dissuading a witness that the false imprisonment occurred. While we have attempted to distinguish the present case from *People* v. *Martinez, supra*, 109 Cal.App.3d 851, to the degree they cannot be reconciled, we respectfully disagree with its holding. The offenses were divisible.

---

[3]Section 136.1, subdivisions (a)(2) and (c)(1) read:

"(a)   Except as provided in subdivision (c), any person who does any of the following is guilty of a misdemeanor:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2)   Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c)   Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

"(1)   Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person."

## II

### *Consecutive Sentences for the Sexual Offenses*

At sentencing, the trial court implemented section 667.6, subdivision (c),[4] stating:

"With respect to Count Two, the Court having heard the evidence in this case, heard the arguments of counsel, the Court finds there is no evidence to prove or reasonably infer violation of 289(a), penetration with a finger was done in any way to facilitate the commission of the sodomy. The Court does recall the evidence that the act was separated by a period of time wherein the victim pleaded with the defendant to stop and the evidence persuaded this Court the Penal Code 289(a) violation was done to humiliate and hurt the victim or to serve the defendant's sexual purpose and, therefore, those are considered separate acts.

"The Court finds the forcible sex act was not done as a means of committing any other act and did not facilitate the commission of any other act further justifying consecutive sentences as to Count Two."

█ It is Saffle's contention that the digital penetration was accomplished solely to facilitate the insertion of Saffle's penis into the victim's rectum, rather than for the purpose of sexual arousal, gratification or abuse.

In *People v. Perez, supra,* 23 Cal.3d 545, a defendant who committed a number of sexual acts against the victim argued he had but one intent, to obtain sexual gratification. The court opined that to accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to ensure that a defendant's punishment will be commensurate with his culpability. The court

---

[4]Section 667.6, subdivision (c) provides:

"In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of Section 220, other than an assault with intent to commit mayhem, provided the person has been convicted previously of violating Section 220 for an offense other than an assault with intent to commit mayhem, subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 288.5, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person whether or not the crimes were committed during a single transaction. If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person would otherwise have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person would otherwise have been released from prison."

reasoned that a defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act. Since none of the sex offenses facilitated commission of any other and none were identical to any other, section 654 did not apply. (23 Cal.3d at pp. 552-554.)

In *People* v. *Harrison* (1989) 48 Cal.3d 321 [256 Cal.Rptr. 401, 768 P.2d 1078], the defendant was convicted of three counts of penetration with a foreign object after he broke into the victim's home and forcibly inserted his finger into her vagina three times. Each digital penetration lasted only seconds as the victim continued to struggle away from the defendant. The Supreme Court upheld the trial court's imposition of separate punishments for each conviction noting that although the question of whether the defendant harbored a single intent within the meaning of section 654 is generally a factual one, the applicability of the statute to conceded facts is a question of law. (48 Cal.3d at p. 335.) The court concluded section 654 did not preclude punishment for each of the sex offenses committed by the defendant.

Saffle points to the absence of an appreciable amount of time elapsing between the digital penetration and the penile penetration as indicative of the fact these were not separate acts and punishable as such. While the record does not indicate how much time elapsed between the two penetrations, we do not find this factor overly significant.

"Indeed, defendant concedes that where the acts are of an entirely *different* nature, they may result in multiple convictions even if committed in rapid succession. Courts have long assumed that no minimum amount of time must separate such acts, nor must they be punctuated by any other significant nonsexual activity." (*People* v. *Harrison, supra,* 48 Cal.3d at p. 330.)

In *People* v. *Phillips* (1985) 169 Cal.App.3d 632 [215 Cal.Rptr. 394], defendant forced a 10-year-old victim into a secluded area, whereupon he inserted his finger into her vagina. After allowing her to urinate, he then inserted his penis into her vagina. The appellate court upheld consecutive sentences, finding they were separate acts involving separate intent. (*Id.* at p. 642; see also *People* v. *Slobodion* (1948) 31 Cal.2d 555, 563 [191 P.2d 1], lewd touching of vagina with penis, followed immediately by oral copulation.)

Contrary to the assertion of Saffle, the conduct of first inserting a finger in Kristi's anus and later his penis does not necessarily indicate that the first entry was done to facilitate the second. Rather, we find that substantial evidence supports the conclusion of the trial court that the two sexual acts

were separate and done with the intent to humiliate the victim and for Saffle's own sexual purposes. He was well aware of the presence of Kristi's daughter in the house; nevertheless, he proceeded to degrade and humiliate Kristi. Despite pleading from Kristi that he stop, Saffle followed the digital penetration with penile penetration. While sexual gratification may well have been a prominent reason; it is also apparent that degradation was also intended. This degradation was amply demonstrated by the *separate* and *distinct* penetrations.

Like *Harrison,* the initial digital penetration was a separate entry; *here with a separate instrument.* "It follows logically that a *new and separate* violation of section 289 is 'completed' each time a *new and separate* 'penetration, however slight' occurs." (*People* v. *Harrison, supra,* 48 Cal.3d at p. 329.)

### III-IV*

. . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment is modified as follows: (1) As to count one, the addition of an additional one-year term pursuant to section 12022, subdivision (b) is vacated; (2) as to count two, the imposition of an additional one-year term pursuant to section 12022, subdivision (b), is vacated. The superior court is directed to prepare an amended abstract of judgment reflecting these modifications.

As modified, the judgment, consisting of a total term of 20 years, is affirmed.

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 1992.

---

*See footnote, *ante,* on page 434.