Filed 12/29/25  P. v. Dailey CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IMAN RASHAD DAILEY,<br><br>    Defendant and Appellant. | F088803<br><br>(Super. Ct. No. 23CM2591)<br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kings County.  Melissa R. Lucero D'Morias, Judge.

Gina C. Teddington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Lewis A. Martinez and Jesica Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

Defendant Iman Rashad Dailey contends on appeal that the trial court abused its discretion in failing to stay the sentence on his false imprisonment conviction (count 3) pursuant to section 654 because it was part of an indivisible course of conduct with his infliction of traumatic injury on a spouse conviction (count 1). We affirm.

## PROCEDURAL SUMMARY

On August 12, 2024, the Kings County District Attorney filed an amended information charging defendant with infliction of traumatic injury on a spouse (Pen. Code, § 273.5, subd. (a);[1] count 1); assault with a firearm on a person (§ 245, subd. (a)(2); count 2); false imprisonment by violence (§ 236; count 3); felon in possession of a firearm (§ 29800, subd. (a)(1); count 4); and felon in possession of ammunition (§ 30305, subd. (a)(1); count 5). The amended information further alleged as to counts 1 and 3 through 5 that defendant personally used a firearm (§ 12022.5, subd. (a)).

On August 13, 2024, the jury found defendant guilty on counts 1 and 3 through 5. As to count 2, the jury found defendant guilty of the lesser included offense of simple assault (§ 240). The jury found the firearm enhancements (§ 12022.5, subd. (a)) not true. The trial court struck the convictions for counts 4 and 5 pursuant to section 1385, without objection from the prosecution, finding they conflicted with the evidence presented and the jury's not true finding on the firearm enhancement allegations (§ 12022.5, subd. (a)). The court sentenced defendant to a total term of three years eight months, as follows: on count 1, three years (the midterm); and on count 2, eight months (one-third the midterm), consecutive.

On October 15, 2024, defendant filed a notice of appeal.

---

[1] All statutory references are to the Penal Code.

2.

# FACTS

On April 13, 2021, defendant was napping at his house in a bedroom. C.V.[2] was also in the house and her son was asleep in another bedroom. At approximately 8:15 p.m., C.V. woke defendant so they could eat dinner. He told C.V. he did not feel well, so she told him they could eat at home, rather than go out. During this conversation, defendant began attacking C.V., throwing a phone at her face that struck her on her right cheek. She testified she "ended up being on the bed where [she] was choked, hit, and ultimately," defendant pointed a gun at C.V. "in close range." She stated, "I was sitting on the bed letting him know I was not trying to fight him. He was standing from where I am, maybe, to the end of the desk. And he had [the gun] extended out, pointed towards my face/chest region." Defendant chambered the gun, making C.V. believe he "could possibly shoot it." C.V. testified she was scared that he might use the gun.

C.V. wanted to exit the bedroom, but defendant then stood in front of the bedroom door and punched a hole through it. He told her that if she wanted to leave, she could. She stated, "[H]e was standing in front of the door as I was still sitting on the other side of the bed … letting him know I was not trying to fight him." However, she stated he was not allowing her to pass and hit her multiple times in the back of the head with the gun while she was going out the door. Defendant was still holding the gun and C.V. was afraid. Once she got past him to the front door, she attempted to exit the house, but stated that at the front door, defendant "had—my arm … in between the door and the wall and … the door … where it closes, and he was leaning on it so I couldn't get out the door and he [bit] both of my arms."

Police arrived while C.V. was still "struggling to get out of the house." Defendant ran out of the back door of the house. Police searched the house and found a bullet, but did not find a gun that matched the bullet.

---

**2**      Defendant's wife will be referred to as C.V. (confidential victim).

The injury from the phone caused permanent damage to C.V.'s cheek. She stated, "[I]t's permanent…. [I]t won't fade…. I [also] had … other bruises and injuries where I couldn't—it was hard for me to talk, move my jaw, eat. My chest, … around my neck was … I had pain. It was … sore from what I—and then bruises on my arms as well." She stated the bite marks on her arms lasted for "a few months." She testified that the injuries were painful for months and felt "horrible."

***Defense***

On cross-examination, C.V. testified defendant was yelling during the incident. She stated that, unbeknownst to her at the time, defendant had been using heroin and cocaine before the incident, and had stopped "cold turkey" on the day of the incident, so when she woke him to eat, "he was sick and he already seemed agitated." She stated, "He said that he didn't feel good." When she told him they could eat at home, he told her he was "going to go smoke with [another person]." When she questioned why he would go smoke when he said he was not feeling well, he "started saying stuff under his breath, … walking away," and "next thing I know, I got hit in the face with the phone."

## DISCUSSION

Defendant contends the trial court abused its discretion when it failed to stay the sentence on his false imprisonment conviction (count 3) pursuant to section 654 because it was part of an indivisible course of conduct with his infliction of traumatic injury on a spouse conviction (count 1). The People disagree. We agree with the People.

***A.    Background***

At trial, the prosecution argued as to false imprisonment (count 3),

> "The [false imprisonment] that we are talking about is the violence, smashing a door, smashing a door up against the arms of [C.V.] in this situation. Preventing her from going out where the police were. That was certainly force and violence. That wasn't just yelling at someone or locking the door. And you know it's uncontroverted that there is a big hole in the door. There is a hole in that door because he stopped her from going out of

4.

the bedroom and then he further stopped her from going out of the house by slamming his body up against the door."

As to infliction of corporal injury on a spouse (count 1), the prosecution argued,

"The defendant willfully inflicted a physical injury on his former cohabitant. Arms. Face. Hand. Broken phone. We get there before we even moved on to the gun and slamming her in the door because all of those things can still contribute to that same issue.… [Traumatic injury] was a natural and probable circumstance of throwing a phone and whacking somebody in the face, from punching them and hitting someone in the face, from slamming a door up against their arms as they were reaching to get out. All of those things contributed to that issue and it was a continuing course of conduct. You can pick any one of those things as you go along as to how he inflicted that injury."

He continued,

"This didn't take an hour to happen. It didn't take two hours to happen …, it was maybe three to five minutes .… [¶] [H]e exploded on [C.V.] physically. Exploded on his wife terrorizing her. He exploded on her with showing a gun to her and exploded trying to prevent her from leaving the house. [¶] The pictures speak for themselves. The testimony of [C.V.] speaks for itself. I ask you to look carefully and review all of the evidence and I believe that you can put it all together very simply and find beyond a reasonable doubt that [defendant] is guilty as charged."

### B.    Law

Section 654 provides in pertinent part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Section 654 applies when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction. (*People v. Maese* (1980) 105 Cal.App.3d 710, 726.) This "precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) The purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 550–551.) "Whether a course of criminal conduct is a divisible transaction which could be

5.

punished under more than one statute within the meaning of section 654 depends on the intent and objective of the actor." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438 (*Saffle*).)

"As a general rule, the sentencing court determines the defendant's 'intent and objective' under section 654." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 268.) "Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) In the absence of some circumstance foreclosing its sentencing discretion, a trial court may base its decision on any of the facts that are in evidence at trial, without regard to the verdicts. (*People v. Deegan* (2016) 247 Cal.App.4th 532, 545.) However, while reviewing courts have assumed on silent records that the failure of a trial court to apply section 654 was based on consideration and rejection of the applicability of that section, the reviewing court may only uphold such a failure if substantial evidence supports a finding of separate intents or separate transactions. (*People v. Coleman* (1989) 48 Cal.3d 112, 162–163.)

### C.    *Analysis*

The trial court did not abuse its discretion pursuant to section 654 when it imposed a consecutive sentence for defendant's false imprisonment conviction (count 3). There is substantial evidence to support the court's implied finding that, while defendant's conduct underlying the false imprisonment conviction occurred immediately following the conduct underlying the infliction of corporal injury conviction, defendant was motivated by separate criminal objectives when committing the offenses.

Here, the trial court sentenced defendant to three years for corporal injury to a spouse (count 1), and eight months for false imprisonment (count 3), consecutive.

At trial, C.V. testified that defendant first attacked her in a bedroom, throwing a telephone at her face, and that she "ended up being on the bed where" he "choked, hit, and ultimately," pointed a gun at her "in close range," even though she "was sitting on the bed letting him know [she] was not trying to fight him."

She stated that he then punched a hole through the bedroom door and stood in front of it, telling her that if she wanted to leave, she could, but hit her multiple times in the back of the head with the gun while preventing her from going out the door.

However, she got past him and got to the front door, but when she attempted to exit the house, defendant shut her arm between the front door and the wall, leaning on the door so she could not get out and then bit both of her arms.

Defendant argues his conduct at the front door was part of a single course of conduct with the infliction of corporal injury to C.V. that began in the bedroom, and accordingly, the sentence for the false imprisonment conviction should have been stayed pursuant to section 654. Defendant relies on *People v. Martinez* (1980) 109 Cal.App.3d 851 (*Martinez*). In *Martinez*, "[t]he defendant assaulted his victim, dragged her under a bridge and, after he desisted from his attempted rape, held her for a few moments to attempt to convince her not to complain to the police." (*Id*. at p. 858.) The *Martinez* court found the attempted rape and false imprisonment involved the same criminal event and that the momentary false imprisonment was incidental to the attempted rape.[3] (*Ibid*.)

The People disagree. Citing *Saffle*, *supra*, 4 Cal.App.4th 434, the People argue on appeal that defendant's act of going to the front door of the house and attacking C.V. as she attempted to leave the house after he had finished attacking her in the bedroom could reasonably be understood as defendant wanting to prevent C.V. from going outside and reporting the assault.

---

[3]    The *Martinez* opinion provided no further details other than the brief summary of events recited here. (See *Martinez*, *supra*, 109 Cal.App.3d at p. 858.)

7.

In *Saffle*, our court concluded section 654 did not prohibit consecutive terms for the defendant for sexually assaulting and falsely imprisoning his victim because the evidence showed the defendant had separate intents and objectives in committing the two offenses, rejecting defendant's argument that false imprisonment "was committed for the purpose of committing the sex offenses [of which he was convicted] and the court violated section 654 by imposing punishment for that conviction." (*Saffle*, *supra*, 4 Cal.App.4th at pp. 437–440.) There, the victim and defendant both temporarily resided in the defendant's brother's apartment when the defendant suddenly pulled a knife on the victim as she slept on the couch, held it to her throat, and ordered her into a bedroom. (*Id*. at pp. 436–437.) While in the bedroom, the defendant sexually assaulted the victim until he heard a knock on the apartment door. (*Id*. at p. 437.) The defendant initially did not allow the victim to answer the door but eventually relented after threatening to kill her and her children if she told anyone about the attack. (*Ibid*.) The victim answered the door without mentioning the assault because of the defendant's threats. (*Ibid*.) She moved out of the apartment a few days later after the defendant threatened her with a knife two additional times. (*Ibid*.) The victim reported the defendant's conduct and he was later convicted and sentenced to consecutive terms for sexual assault and false imprisonment. (*Id*. at pp. 436, 437.) We concluded that section 654 did not prohibit multiple punishment because "once the sexual offenses were completed, [the defendant's] objective changed." (*Id*. at p. 440.) "He was no longer interested in fulfilling a sexual objective; he was seeking to prevent [the victim] from reporting the incident." (*Ibid*.) Our court observed that the defendant's conduct, "constituting an attempt to dissuade a victim from reporting a crime, under the attendant circumstances, could have been separately charged as a violation of section 136.1, subdivisions (a)(2) and (c)(1)." (*Ibid*., fn. omitted.) We determined that "[i]t was to further the objective of dissuading a witness that the false imprisonment occurred." (*Id*. at p. 440.)

In *Saffle*, we also expressly criticized *Martinez*, on which the defendant relies. We explained, "[w]e perceive a critical distinction between a situation (*Martinez*) where a person is held for a few moments in an attempt to convince her not to complain to the police and a situation where a victim is restrained while being threatened with future violence to herself and her children if she reports the crimes." (*Saffle*, *supra*, 4 Cal.App.4th at pp. 439–440.) As in *Saffle*, we again disagree with the contrary conclusion in *Martinez*, *supra*, 109 Cal.App.3d at p. 858. We further note that, even regardless of whether threats of future harm are made by the defendant, *Martinez* is simply inconsistent with the weight of authority applying section 654. In *Martinez*, the defendant's objective in holding the victim under the bridge and attempting to convince her not to report the assault to the police is separate from the defendant's objective in assaulting and attempting to rape the victim. The *Martinez* court, however, failed to acknowledge section 654 required courts to determine whether a defendant harbored separate intents and objectives in deciding whether to impose multiple punishments.

Accordingly, here, while the false imprisonment of C.V. was momentary and temporally close to the infliction of corporal injury to a spouse, as was the case in *Martinez*, and while, unlike *Saffle*, defendant here did not make threats against C.V. in an attempt to prevent her from reporting the incident while holding her at the front door, defendant here, like *Saffle*, stopped his commission of the first offense—infliction of corporal injury on a spouse—and did not use force again until C.V. attempted to leave. While the false imprisonment occurred very shortly after the infliction of corporal injury on C.V. took place in the bedroom, the evidence here supports the court's reasonable inference that the force used at the front door was no longer simply a continuation of the first attack in the bedroom, but rather was motivated by and intended to implement defendant's new intent of preventing C.V. from leaving the house, as he had stopped attacking her at the bed, got up and walked to the bedroom door, told her she could leave, but then hit her with the gun as she walked by, and again walked to the front door to

9.

block her way out and pinned her arm behind the door while biting her arms as he held her there, thus preventing her from leaving the house and going outside where police were waiting. Accordingly, there is sufficient evidence to reasonably conclude defendant imprisoned C.V. for a reason other than inflicting more corporal injury.

Defendant also relies on *People v. Latimer* (1993) 5 Cal.4th 1203. There, the Supreme Court held that multiple punishment for kidnapping and rape is barred by section 654, where the sole purpose of the kidnapping was to facilitate rape. (*People v. Latimer*, *supra*, at p. 1216.) However, *Latimer* is also inapplicable, as the kidnapping in *Latimer* occurred prior to the rape and the evidence showed it was motivated solely by defendant's desire to rape the victim. (*Id*. at pp. 1206–1207.) Here, in contrast, as discussed above, the false imprisonment occurred when C.V. attempted to leave the house through the front door, after defendant's initial attack on her in the bedroom had already ended. Accordingly, where false imprisonment occurs only to facilitate corporal injury of a spouse, section 654 applies, but where, as here, the false imprisonment is committed for a separate objective or continues after the cessation of the corporal injury of a spouse with the objective of inflicting further acts of violence or terrorizing the victim to dissuade her from leaving the defendant's presence and reporting the assault to the police, section 654 does not apply. (See *Saffle*, *supra*, 4 Cal.App.4th at pp. 439–440.)

" '[V]iew[ing] the evidence in a light most favorable to the respondent and presum[ing] … the existence of every fact the [trial court] could reasonably deduce from the evidence' " (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312–1313), the evidence adduced at trial here supports the conclusion that defendant falsely imprisoned C.V. at the front door for the purpose preventing her from leaving the house, as the attack in the bedroom had already ended when she tried to walk past defendant at the front door and he attacked her again. Accordingly, substantial evidence supports the trial court's implied findings that defendant entertained separate intents and objectives for the conduct underlying the convictions of corporal injury to a spouse and false imprisonment. We

conclude section 654 does not require a stay of the eight-month sentence for false imprisonment.

## <u>DISPOSITION</u>

The judgment is affirmed.