Filed 10/29/13  P. v. Ortiz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ISMAEL CALIXTO ORTIZ,<br><br>    Defendant and Appellant. | G047301<br><br>(Super. Ct. No. 11CF0203)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed in part, reversed in part, and remanded.

Jennifer L. Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant and appellant Ismael Calixto Ortiz appeals from the trial court's judgment after a jury convicted him of (1) forcible rape committed during the commission of a burglary (Pen. Code, §§ 261, subd. (a)(2), 667.61, subds. (a), (c) & (d)(4); count 1); (2) dissuading or attempting to dissuade the victim from reporting the crime through force or threat of force (Pen. Code, § 136.1, subd. (c)(1); count 2); and (3) first degree residential burglary for entering a dwelling with intent to commit rape (Pen. Code, § 459; count 3).[1]

Ortiz contends the trial court erred in instructing the jury with CALCRIM No. 318 because the instruction allowed the jury to consider the victim's hearsay statement that she was raped for the truth of the matter rather than for the limited, nonhearsay purpose of showing she promptly reported the offense. Ortiz also contends the trial court erred in failing to stay his sentence for dissuading the victim because the threats on which his conviction was based are the same threats he used to accomplish the rape, and therefore section 654 prevented him from being punished for both crimes. Finally, Ortiz contends section 654 prohibited the trial court from imposing a consecutive sentence on the burglary count even though the court properly stayed that sentence.

As explained below, we reject Ortiz's first two challenges, but agree the trial court erred in imposing a consecutive sentence on count 3. Accordingly, we affirm in part, reverse in part, and remand for the trial court to resentence Ortiz on count 3.

I

FACTUAL AND PROCEDURAL BACKGROUND

In January 2005, Rocio B. was 17 years old and lived with her two-year-old son, six brothers, two sisters, and mother in a two bedroom apartment in Santa Ana,

---

[1]    All statutory references are to the Penal Code.

California.[2]  Rocio and her son shared one bedroom while her mother, two sisters, and one brother shared the other bedroom.  Rocio's other brothers slept on the couches and floor in the living room.  The apartment was on the second floor and had a balcony.  Underneath the balcony was a fence and telephone junction box that some of Rocio's brothers would use to climb up onto the balcony.  The sliding glass door from the apartment to the balcony did not lock.

One night that month, Rocio and her son fell asleep around 11:00 p.m. while watching television in their bedroom.  Her mother was at work and her siblings fell asleep in their bedroom or the living room.  Her oldest brother, Luis, was 18 years old and slept on a mattress on the living room floor near the sliding glass door.  Before going to bed, Luis locked the apartment's front door.

Around 2:30 a.m., Rocio woke up to go to the restroom.  The lights were off, but the television was still on.  The light from the television allowed Rocio to see a man kneeling next to her bed with his hand on her son's chest.  He told Rocio he would come back and kill her son if she said anything.  The man climbed into bed with Rocio and removed her pants and underwear.  As he pulled down his own pants and underwear the man told Rocio, "This is a revenge."  Rocio, however, had no idea what he was talking about and did not recognize the man.  He then raped Rocio while holding her down by her shoulders.  Rocio did not try to resist or make any noise because she was afraid he would hurt her or her son.  Rocio lay on her back during the entire encounter and the light from the television allowed her to clearly see the man's face.  While he was on top of Rocio, the man said he would do the same thing to Rocio's sister if she said anything.  The man ejaculated inside Rocio and then got up, put his clothes on, and ran out of her room.

---

[2]      We use Rocio's first name and the first name of her family members to protect Rocio's privacy.  No disrespect is intended.

After the man left, Rocio put her clothes on and ran out into the living room crying hysterically. She woke up Luis and told him she had been raped. Luis went out to the balcony, but did not see anyone. Earlier, Luis had felt something while he was asleep, but thought it was one of his brothers getting up to use the restroom. Rocio told Luis not to call the police because she was afraid the man would return and kill her son. Nonetheless, Luis called 911 at approximately 3:00 a.m. The operator told Rocio to lie down and avoid using the restroom until the police arrived.

Police investigators did not find any signs of forced entry, fingerprints, or footsteps outside the apartment. A sexual assault examination revealed that Rocio did not suffer any physical injuries such as bruising or vaginal tearing during the rape. The nurse conducting the examination obtained several vaginal swabs from Rocio that revealed the presence of semen. Police investigators obtained a DNA profile from the semen, but efforts to find a DNA match were unsuccessful.

In 2010, the police matched Ortiz's DNA profile with the DNA profile from the semen collected following Rocio's 2005 attack. Police then presented Rocio with a photographic lineup of five men and she identified Ortiz as her assailant. Police arrested Ortiz based on the DNA match and Rocio's identification. During an interview, Ortiz disclosed he lived about two blocks from Rocio's apartment in 2005, but denied raping her and claimed he did not recognize Rocio from a photograph police showed him.

In June 2011, the prosecutor filed a three-count information against Ortiz as described above. During trial, Rocio testified about the attack, her statements reporting the attack to her brother Luis immediately afterwards, and her statements to the police. Luis also testified about the statements Rocio made to him immediately after the attack. A jury found Ortiz guilty on all three counts. The trial court sentenced Ortiz to a total of 29 years to life as follows: 25 years to life on count 1, a consecutive term of 4 years on count 2, and a consecutive term of 16 months on count 3 stayed under section 654. Ortiz timely appealed.

4

DISCUSSION

A.  *Ortiz Forfeited His Claim the Trial Court Erred in Giving CALCRIM No. 318*

Ortiz contends the trial court erred by instructing the jury with CALCRIM No. 318, which informed the jury it could consider a witness's prior, out-of-court statements in two ways:  "1.  To evaluate whether the witness's testimony in court is believable;  [¶]  AND  [¶]  2.  As evidence that the information in (those) earlier statements is true."  Ortiz contends this instruction improperly allowed the jury to consider Rocio's hearsay statement to her brother that she had been raped for the truth of that statement, rather than for the limited, nonhearsay purpose of showing she promptly reported the attack.  Ortiz, however, forfeited this challenge by failing to object to CALCRIM No. 318 or request a limiting jury instruction regarding Rocio's statement.

Under the fresh complaint doctrine, "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred."  (*People v. Brown* (1994) 8 Cal.4th 746, 749-750 (*Brown*).)  The evidence is admissible only "for the limited purpose of showing that a complaint was made by the victim, and not for the truth of the matter stated.  [Citation.]  Evidence admitted pursuant to this doctrine may be considered by the trier of fact for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime."  (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522 (*Ramirez*).)

Before trial the prosecutor informed the court he intended to offer testimony showing Rocio came out of her room immediately after the attack crying

5

hysterically and told her brother she had been raped, but not to call the police because the attacker threatened to come back and kill her son. The prosecutor explained he intended to offer the evidence to show Rocio reported the attack immediately after it occurred and she feared telling the police because the attacker threatened to harm her son. Ortiz's counsel objected to this evidence as irrelevant.

The trial court overruled the objection, explaining it would admit the evidence for the limited, nonhearsay purpose of establishing the circumstances under which Rocio reported the attack to her brother. The court, however, stated it would "be more than happy" to give a limiting jury instruction explaining the evidence was admitted solely to show Rocio promptly reported the attack, but not to establish a rape actually occurred. Ortiz's counsel did not request a limiting instruction during the trial.

As the court and counsel finalized the jury instructions after the close of evidence, the court informed counsel it proposed to give CALCRIM No. 303, which explained, "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." The instruction, however, did not specifically refer to Rocio's statement to her brother and the jury was not advised of the statement's limited purpose when Rocio's brother testified about it during trial. Upon being advised of the trial court's intent to give CALCRIM No. 303, Ortiz's counsel again failed to request a limiting instruction of his own or any modification to the court's proposed instruction.

"On request, the trial court must instruct the jury as to the limited purpose for which the fresh complaint evidence was admitted. [Citation.] However, the trial court has no duty to give such an instruction in the absence of a request." (*People v. Manning* (2008) 165 Cal.App.4th 870, 880 (*Manning*); see also *Brown*, *supra*, 8 Cal.4th at p. 757.) Moreover, "'[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for

6

purposes of appeal. . . .' [Citation.]" (*People v. Whalen* (2013) 56 Cal.4th 1, 81-82 (*Whalen*), quoting *People v. Lee* (2011) 51 Cal.4th 620, 638; see also *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.)

Ortiz concedes CALCRIM No. 318 is generally a correct statement of the law regarding a witness's prior statements. (See generally *People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1038-1039.) Similarly, Ortiz does not dispute the evidence supported giving CALCRIM No. 318 because prior statements by witnesses other than Rocio were offered and admitted at trial. Indeed, Ortiz's counsel joined with the prosecutor in asking the trial court to instruct the jury with CALCRIM No. 318. Accordingly, Ortiz's challenge boils down to the trial court's failure to give a more specific limiting instruction regarding the permissible use of Rocio's statement to her brother, but Ortiz forfeited that challenge by repeatedly failing to request a limiting instruction specifically addressing that evidence.[3] (*Manning*, *supra*, 165 Cal.App.4th at p. 880 [defendant forfeited challenge to trial court's failure to give limiting instruction regarding fresh complaint statements because defendant failed to request limiting instruction]; see also *Whalen*, *supra*, 56 Cal.4th at pp. 81-82 [defendant forfeited challenge to trial court's failure to clarify jury instruction because defendant failed to request clarifying instruction].)

Although Ortiz acknowledges his lawyer failed to object to CALCRIM No. 318 or request a limiting instruction, he argues we must consider the merits of this challenge for two reasons. First, section 1259 permits an appellate court to "review any instruction given, refused or modified, even though no objection was made thereto in the lower court, *if the substantial rights of the defendant were affected thereby*." (Italics added.) Second, assuming Ortiz's lawyer was required to object or request a limiting

---

[3] Ortiz does not challenge the trial court's evidentiary ruling admitting Rocio's fresh complaint statements.

instruction, his counsel's failure to do so shows he received ineffective assistance of counsel. Both of these contentions fail.

In applying section 1259, "'[t]he cases equate "substantial rights" with reversible error' under the test stated in *People v. Watson* (1956) 46 Cal.2d 818. [Citation.]" (*People v. Felix* (2008) 160 Cal.App.4th 849, 857.) The *Watson* test requires reversal when it is reasonably probable the appealing party would have obtained a more favorable outcome absent the trial court's error. (*Watson*, at p. 836.) Ortiz failed to make that showing.

Rocio's detailed trial testimony described the attack and how the light from the television allowed her to clearly see her attacker's face. She explained she did not recognize her attacker and did not consent, but nonetheless did not physically resist or make any noise because of the assailant's threat to kill her son. The jury did not have to rely on her secondhand statement to her brother regarding the attack, but rather was able to hear her directly and judge her credibility. Her fresh complaint statements were consistent with and cumulative to her detailed trial testimony. Moreover, the DNA profile of the semen recovered from Rocio during the sexual assault examination matched Ortiz's DNA profile. In his interview with police immediately after his arrest, Ortiz claimed he did not recognize Rocio and asserted the only woman with whom he had intercourse during the 2005 time frame was his wife. At trial, Ortiz did not testify but his lawyer nonetheless suggested Rocio had consensual sex with Ortiz either earlier in the day of the attack or after sneaking him into the apartment at the time of the attack. Based on the evidence at trial, we conclude it is not reasonably probable Ortiz would have obtained a more favorable outcome had the trial court given a more specific limiting instruction addressing Rocio's fresh complaint statement. (*Manning*, *supra*, 165 Cal.App.4th at pp. 880-881 [harmless error to admit fresh complaint evidence for all purposes where victim testifies and fresh complaint evidence consistent with and cumulative to testimony]; *Ramirez*, *supra*, 143 Cal.App.4th at p. 1526 [same].)

8

To support his claim of ineffective assistance of counsel, Ortiz must show "(1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice." (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1146-1147 (*Montoya*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 688.) Ortiz failed to make either showing.

Ortiz's trial attorney reasonably could have concluded that a limiting instruction regarding Rocio's fresh complaint would be detrimental to Ortiz because it would highlight that evidence. (*People v. Hinton* (2006) 37 Cal.4th 839, 878 ["Defendant also complains that counsel's failure to request a limiting instruction concerning his prior murder conviction demonstrated ineffective assistance, but counsel may have deemed it unwise to call further attention to it"]; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 934 ["a limiting instruction would have added little to the jury's understanding of the case [and] the decision not to request one was a reasonable tactical choice by defense counsel to avoid directing the jury to focus on the evidence"].) Ortiz offers no specific explanation to support his conclusion his counsel's representation was deficient.

Assuming Ortiz's trial attorney should have asked for a limiting instruction, Ortiz must show "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citations.]" (*Montoya*, *supra*, 149 Cal.App.4th at p. 1147.) As explained above, any conceivable error in giving CALCRIM No. 318 without also giving a limiting instruction on the permissible use of Rocio's fresh complaint statement was harmless because it is not reasonably probable Ortiz would have obtained a more favorable outcome. (*Manning*, *supra*, 165 Cal.App.4th at pp. 880-881; *Ramirez*, *supra*, 143 Cal.App.4th at p. 1526.) Accordingly, Ortiz fails to show the requisite prejudice to support his ineffective assistance of counsel claim or any reversible in giving CALCRIM No. 318.

B.      *The Trial Court Did Not Err In Imposing Consecutive Sentences on Counts 1 and 2*

Ortiz contends the trial court erred in sentencing him to consecutive terms on count 1 (forcible rape during the course of a burglary) and count 2 (dissuading a witness through force or threat of force) because he committed both crimes to achieve his single intent and objective to rape Rocio. According to Ortiz, his threats to kill Rocio's son and rape her sister were the means he used to force Rocio to submit to the rape, and therefore the trial court should not have separately punished him for dissuading Rocio based on those same threats. We disagree.

"Section 654 precludes multiple punishment[s] for a single act or indivisible course of conduct punishable under more than one criminal statute."[4] (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267 (*Cleveland*).) It allows a defendant to be convicted for a single act under more than one criminal statute, but the defendant only may be punished under one statute. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) Section 654 "is intended to ensure that defendant is punished 'commensurate with his culpability' [citation] . . . ." (*Ibid.*)

"Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the 'intent and objective' of the actor. [Citation.]" (*Cleveland*, *supra*, 87 Cal.App.4th at p. 267.) Indeed, "[i]t is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." (*Harrison*, *supra*, 48 Cal.3d at p. 335.)

The Supreme Court has "traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be

_____

4       Section 654 states, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

10

punished only once. [Citation.]" (*Harrison*, *supra*, 48 Cal.3d at p. 335.) "If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct." (*Cleveland*, *supra*, 87 Cal.App.4th at pp. 267-268.)

Moreover, "'at some point the means to achieve an objective may become so extreme they can no longer be termed "incidental" and must be considered to express a different and more sinister goal than mere successful commission of the original crime. . . . [¶] . . . [¶] . . . [S]ection [654] cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense.'" (*Cleveland*, *supra*, 87 Cal.App.4th at p. 272.)

"As a general rule, the sentencing court determines the defendant's 'intent and objective' under section 654." (*Cleveland*, *supra*, 87 Cal.App.4th at p. 268.) Whether the defendant acted with a single intent or possessed multiple objectives is a factual determination. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438 (*Saffle*).) We review that determination for substantial evidence "in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence." (*Cleveland*, at p. 271.)

In *People v. Latimer* (1993) 5 Cal.4th 1203, the Supreme Court concluded that a defendant who kidnapped his victim, drove her to a remote spot in the desert, raped her, and left her behind acted with a single objective under section 654 and could not be separately punished for the crimes of kidnapping and rape. (*Latimer*, at p. 1205.) "Although the kidnapping and the rapes were separate acts," the *Latimer* court concluded "the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Id*. at p. 1216.) "[B]ecause the sole objective of the kidnapping

11

was to facilitate the rape," section 654 limited punishment to the rape. (*Latimer*, at pp. 1205, 1216.)

In contrast, the *Saffle* court concluded section 654 did not prohibit consecutive terms for sexually assaulting and falsely imprisoning his victim because the evidence showed the defendant had separate intents and objectives in committing the two offenses. (*Saffle*, *supra*, 4 Cal.App.4th at pp. 439-440.) The defendant and the victim both temporarily resided in the defendant's brother's apartment when the defendant suddenly pulled a knife on the victim, held it to her throat, and ordered her into a bedroom. While in the bedroom, the defendant sexually assaulted the victim until he heard a knock on the apartment door. The defendant initially did not allow the victim to answer the door, but eventually relented after threatening to kill her and her children if she told anyone about the attack. The victim answered the door without mentioning the assault because of the defendant's threats. She moved out of the apartment a few days later after the defendant threatened her with a knife two additional times. The victim reported the defendant's conduct and he was later convicted and sentenced to consecutive terms for sexual assault and false imprisonment. (*Id*. at pp. 436-437.)

Although the defendant engaged in a single course of conduct in committing the sexual assault and false imprisonment, the appellate court affirmed the consecutive sentences because the evidence showed the defendant acted with two separate objectives: "[O]nce the sexual offenses were completed, [the defendant's] objective changed. He was no longer interested in fulfilling a sexual objective; he was seeking to prevent [the victim] from reporting the incident." (*Saffle*, *supra*, 4 Cal.App.4th at p. 440.) As the *Saffle* court explained, case law makes it "reasonably clear that a separate [criminal act] against an unresisting victim or witness, whether gratuitous or to facilitate escape or to avoid prosecution, may be found not incidental to [the underlying offense] for purposes of section 654. If the trier of fact determines the crimes have different intents and motives, multiple punishments are appropriate." (*Saffle*,

12

at p. 439.) Accordingly, the false imprisonment was a separate act under section 654 because it was not committed to facilitate or accomplish the sexual assault, but rather to dissuade the victim from reporting the sexual assault. (*Saffle*, at pp. 439-440.)

Here, the trial court sentenced Ortiz to consecutive terms on counts 1 and 2 because it found Ortiz threatened Rocio's son and sister with the "dual intent" to (1) force Rocio to submit to the rape without making any noise or otherwise resisting, and (2) not report the rape to the police or anyone else. Substantial evidence supports this finding. Rocio awoke in the middle of the night to find Ortiz knelling next to her bed with his hand on her son's chest. He told Rocio he would kill her son if she said anything. Based on that threat, Rocio complied with Ortiz's instructions by remaining silent and submitting to the rape. During the rape, Ortiz further threatened that he would rape her sister if Rocio said anything about the offense. As in *Saffle*, this threat against Rocio's sister was not merely incidental to the rape, but rather was a separate act to dissuade Rocio from reporting the rape. Indeed, Rocio already had submitted to the rape without any resistance because Ortiz had threatened to harm her son.

Ortiz contends *Saffle* is distinguishable because the defendant committed the separate act of threatening the victim to prevent her from reporting the sexual assault only *after* he completed the sexual assault. In contrast, Ortiz contends he made his threats against Rocio's son and sister *before and during* the rape. According to Ortiz, this shows he harbored only a single intent and objective to rape Rocio through threats against her son and sister. We are not persuaded.

Although Ortiz made the threat against Rocio's sister during the rape, he already had succeeded in obtaining her compliance by threatening to harm Rocio's son. Rocio already had submitted to the rape when Ortiz uttered his second threat against Rocio's sister and therefore the evidence supports the conclusion that threat was not necessary to facilitate or accomplish the rape. As in *Saffle*, Ortiz's threat against Rocio's sister was a separate act under section 654 because it was not the means to facilitate or

13

accomplish the rape, but rather a separate act committed to avoid prosecution.  California courts have interpreted section 654 to allow separate punishment for an additional criminal act if the defendant harbored a separate intent and objective in committing that act, even if the principal crime is ongoing.  (See, e.g., *People v. Nguyen* (1988) 204 Cal.App.3d 181, 190-193 [shooting a compliant robbery victim was a separately punishable act because it was not necessary to achieve the robbery objective].)  It is the defendant's intent and objective that determine whether the defendant's acts are separately punishable under section 654, not the acts' temporal proximity.  (*Harrison*, *supra*, 48 Cal.3d at p. 335.)

Finally, Ortiz contends *People v. Martinez* (1980) 109 Cal.App.3d 851, is the controlling authority on whether he possessed dual intents under section 654.  In *Martinez*, the defendant assaulted the victim, dragged her under a bridge and, after he stopped his attempted rape, restrained her for several minutes while attempting to convince her not to complain to police.  The appellate court concluded the defendant could not be punished for both assault with intent to commit rape and false imprisonment "for that sequence of events."  (*Martinez*, at p. 858.)  The *Martinez* court, however, provides no analysis to support this conclusion.

*Saffle* distinguished *Martinez*, explaining "[w]e perceive a critical distinction between a situation (*Martinez*) where a person is held for a few moments in an attempt to convince her not to complain to the police and a situation where a victim is restrained while being threatened with future violence to herself and her children if she reports the crimes."  (*Saffle*, *supra*, 4 Cal.App.4th at pp. 439-440.)  The *Saffle* court further stated, to the extent it could not reconcile its facts with *Martinez*'s, "we respectfully disagree with its holding."  (*Id*. at p. 440.)

We too distinguish *Martinez* based on Ortiz's threats of future violence and disagree with *Martinez*'s conclusion.  *Martinez* is simply inconsistent with the weight of authority applying section 654.  In *Martinez*, the defendant's objective in holding the

14

victim under the bridge and attempting to convince her not to report the assault to the police is separate from the defendant's objective in assaulting and attempting to rape the victim. The *Martinez* court, however, failed to acknowledge section 654 required courts to determine whether a defendant harbored separate intents and objectives in deciding whether to impose multiple punishments.

C.      *The Trial Court Erred in Sentencing Ortiz to a Consecutive Term on Count 3*

On count 3, the trial court sentenced Ortiz to a consecutive term of 16 months (one-third of the midterm) and then ordered that sentence stayed under section 654. Ortiz contends the court erred in imposing a consecutive sentence on count 3 even though the court stayed the sentence. The attorney general concedes the issue and we accept that concession. Although we affirm the conviction, we remand for the trial court to resentence Ortiz on count 3.

"[A sentence] cannot be both consecutive and stayed simultaneously because the two are mutually exclusive." (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164.) Having concluded that section 654 prevented it from punishing Ortiz for both the rape and the burglary, the trial court properly sentenced Ortiz on the rape count, but the court erred when it imposed a consecutive term for the burglary. The one-third the midterm rule the trial court applied in sentencing Ortiz on the burglary count does not apply to a sentence stayed under section 654. (*Cantrell*, at p. 1164.)

15

### III

#### DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded. We affirm the conviction on all three counts and the sentence on counts 1 and 2. We reverse the sentence on count 3 and remand for the trial court to resentence Ortiz on that count.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

16