Filed 3/12/15  P. v. Truillo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GILBERT TRUILLO, JR.,<br><br>    Defendant and Appellant. | D065438<br><br><br>(Super. Ct. No. SCD250578) |


APPEAL from a judgment of the Superior Court of San Diego County, Lorna Alksne, Judge.  Affirmed as modified.


Patrick M. Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony Da Silva and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Gilbert Truillo, Jr.,[1] of first degree robbery (Pen. Code, § 211; count 1),[2] residential burglary (§§ 459, 460; count 2), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 4), assault with a firearm (§ 245, subd. (a)(2); count 5), making a criminal threat (§ 422; count 6), and false imprisonment (§§ 236, 237, subd. (a); count 7). The jury also found true the special allegation that Truillo personally used a deadly and dangerous weapon to commit a criminal threat within the meaning of section 12022, subdivision (b)(1). In a nonjury, bifurcated proceeding, Truillo admitted, and the court found true, the special allegation that he served a prior prison term within the meaning of sections 667.5, subdivision (b), and 668.

The court sentenced Truillo to prison for nine years: six years for the robbery, a consecutive one-year term for the assault with a deadly weapon, a consecutive eight-month term for the criminal threat, a consecutive four-month term for the true finding allegation that a deadly weapon was used to commit a criminal threat, and a consecutive one-year term for the true finding he served a prior prison term. Pursuant to section 654, subdivision (a), the court stayed the sentences for his convictions of residential burglary, assault with intent to produce great bodily injury, assault with a firearm, and false imprisonment.

---

[1] Truillo is also known as Gilbert Trujillo. For consistency, we use Truillo throughout.

[2] All further statutory references are to the Penal Code unless otherwise noted.

On appeal, Truillo contends the trial court erred in admitting into evidence the 911 call in which the victim reported the incident because it was inadmissible hearsay and violated his Sixth Amendment confrontation clause rights.  He further contends the imposition of a consecutive term for assault with a deadly weapon charged in count 3 violated section 654.  Lastly, he contends the abstract of judgment must be amended to correct a typographical error.  We conclude the court did not err in admitting the 911 call.  However, we conclude the judgment must be modified to stay imposition of the sentence for the assault with a deadly weapon conviction under section 654 and the abstract of judgment must be amended to correct the typographical error.

## FACTS

Charles Williams, a 63-year-old man, lived alone in a residence behind two other homes.  On September 3, 2013, at approximately 3:00 p.m., Williams was at home watching television when he noticed a person at his front door.  Upon closer inspection, Williams recognized Truillo,[3] who was accompanied by an African-American male Williams did not recognize.

The two men pried open Williams' front security door, breaking through the locked deadbolt.  The unidentified man entered Williams' residence first and struck Williams on the head with a hammer.  Williams suffered a laceration to his head and required stitches. Truillo then entered Williams' residence and grabbed Williams' neck in

---

[3]    Williams knew Truillo through a friend's daughter, who was Truillo's girlfriend. A couple of days before this incident, Williams tried to intervene in an argument between Truillo and the girlfriend.  Truillo threatened to "f–k him up" if Williams did not mind his own business.

a choke-hold position. Truillo ordered, and then attempted to force, Williams to the floor. A third man, Jessie Jones, appeared at the front door, kicked Williams, and also ordered Williams to the floor. Williams struggled and resisted attempts by the perpetrators to force him to the floor. Jones then brandished a pistol and threatened to shoot Williams. Fearing for his life, Williams stopped resisting and let the perpetrators take him to the floor.

While on the floor, the perpetrators stole Williams' wallet, $40 in cash, his cell phone, and a silver bracelet. Truillo also demanded Williams tell him his personal identification number (PIN) for his debit card and threatened to strike Williams with the hammer if he did not comply. Williams gave a fake PIN to Truillo. When Williams stood up, his head was bleeding.

Immediately after the three men left, Williams walked outside to seek help and find a telephone. Jones, who was separated from the other two perpetrators, rode a bicycle alongside Williams as he walked. Williams went first to a friend's house at the corner of the street. While walking to the first house, Jones continued to follow and talk to Williams. When Williams learned his friend was asleep, he proceeded to a different house to call 911. Again, as Williams walked to the second house, Jones continued to follow and talk to Williams. When Williams arrived at the second house, he informed the residents about the attack and proceeded to the back of the house to call 911. Jones remained outside in front of the second house. At the time of the 911 call, Williams felt "shaken up a little bit, nervous, . . . [and] scared." Williams made the 911 call

4

approximately 20 minutes after the attack. At trial, Williams' telephone call to 911 was played for the jury.

Davina Mangan, a resident at the second house, testified Williams was bleeding from his head. He looked "out of it" and "very, very scared, like he was in fear." Williams told her he had been robbed. Mangan also overheard Jones tell her friend that Williams would not be hurt if he gave up the money. Minutes after initially seeing Williams, Mangan testified that Williams was incoherent, stuttering, and his eyes were rolling.

Within 5 to 10 minutes of Williams' 911 call, the police arrived. Williams spoke to Detective Robert Anschick of the San Diego Police Department. Detective Anschick testified Williams had a laceration on his head and "was pretty shaken up, a little disoriented." Nonetheless, Detective Anschick was able to take a detailed statement from Williams in which Williams identified Truillo and Jones as two of the three men who attacked him.

Officer Carlos Cardenas also testified Williams identified Truillo on the night of the attack as the person who struck him in the head with a hammer. When Officer Cardenas arrived at Mangan's residence, Williams was covered in blood, terrified, nervous, scared, in shock, and speaking rapidly and excitedly. The paramedics transported Williams to a hospital, where he received three stitches for a head wound.

DISCUSSION

I

*Spontaneous Statement Exception*

Truillo contends the court erred by admitting Williams' 911 call to the police under the spontaneous statement hearsay exception because "Williams' call was not spontaneous but rather a testimonial report to the police, which rendered the 911 call inadmissible."

Hearsay evidence is defined as "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "Except as provided by law, hearsay evidence is inadmissible." (*Id.* at subd. (b).) Because Williams' statements were made out of court and admitted for their truth, they constituted hearsay.

Evidence Code section 1240 provides, "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

In *People v. Poggi* (1988) 45 Cal.3d 306, 318 (*Poggi*), our Supreme Court stated, " 'The foundation for this exception is that if the declarations are made under the immediate influence of the occurrence to which they relate, they are deemed sufficiently trustworthy to be presented to the jury. [Citation.] . . . The basis for this circumstantial probability of trustworthiness is "that in the stress of nervous excitement the reflective

6

faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief." ' [Citation.] [¶] Whether the requirements of the spontaneous statement exception are satisfied in any given case is, in general, largely a question of fact. [Citation.] The determination of the question is vested in the court, not the jury. [Citation.] In performing this task, the court 'necessarily [exercises] some element of discretion . . . .' "

For the spontaneous statement exception to the hearsay rule to apply, " '(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' " (*Poggi*, *supra*, 45 Cal.3d at p. 318.)

Truillo challenges the second requirement, arguing the lapse of time between the attack and the 911 call shows the statements were not spontaneous. He argues Williams did not call 911 immediately after the attack and had sufficient time to reflect and contrive while he was walking to Mangan's house.

The determination of whether the requirements are satisfied for the application of spontaneous statement exception to the hearsay rule is a factual question. (*Poggi*, *supra*, 45 Cal.3d at p. 318.) "[W]e will uphold the trial court's determination if it is supported by substantial evidence. [Citation.] We review for abuse of discretion the ultimate decision whether to admit the evidence." (*People v. Phillips* (2000) 22 Cal.4th 226, 236.)

7

"[T]he discretion of the trial court is at its broadest" when it determines whether a statement meets the second requirement of the spontaneous statement exception because it relates more to the peculiar facts of the individual case. (*Poggi*, *supra*, 45 Cal.3d at pp. 318-319.)

" 'Neither lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity *if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance*.' " (*Poggi*, *supra*, 45 Cal.3d at p. 319, italics added by *Poggi*.) In *Poggi*, the Supreme Court held the victim's identification of her attacker in response to questioning by a police officer 30 minutes after the incident was spontaneous within the meaning of Evidence Code section 1240. (*Poggi*, at pp. 318-320; see *People v. Raley* (1992) 2 Cal.4th 870, 893–894 [statement made 18 hours after event held spontaneous under Evid. Code, § 1240].)

Here, Williams made the 911 call approximately 20 minutes after he was struck in the head by a hammer. The record shows his head was still bleeding and he was nervous and scared when he made the call. Moreover, witness testimony confirmed Williams appeared "out of it" and "very, very scared, like he was in fear." In this injured and disoriented state, and because the perpetrators had stolen his cell phone, Williams sought a safe location in which to use a telephone and call 911.

In addition, from the time of the attack until Williams made the 911 call, one of the perpetrators continued to follow and talk to Williams, and even remained outside of the house while Williams called 911. The record shows the police arrived within 5 to 10

8

minutes of the 911 call, described Williams as terrified, nervous, in shock, and speaking rapidly and excitedly.

Based on this record, we conclude substantial evidence supports the finding Williams made the 911 call while still under the influence of nervous excitement caused by the event. (*People v. Phillips*, *supra*, 22 Cal.4th at p. 236.) We thus conclude the court did not abuse its discretion in admitting Williams' 911 call under the spontaneous statement exception. Accordingly, we need not discuss the contemporaneous statement hearsay exception. (Evid. Code, § 1241.)

II

*Confrontation Clause*

Truillo also contends the trial court's ruling to admit Williams' 911 call "violated [his] Sixth Amendment confrontation clause rights because the statements provided were a testimonial account of the earlier crime and were not made in an effort to address an ongoing emergency." We disagree.

The Sixth Amendment's confrontation clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Crawford v. Washington* (2004) 541 U.S. 36, 53-54.) In this case, Williams did appear at trial and was subject to cross-examination.

Additionally, the Confrontation Clause is inapplicable to nontestimonial statements. (*Davis v. Washington* (2006) 547 U.S. 813, 821.) The United States Supreme Court held that a victim's out-of-court statements made to a 911 operator were

9

not "testimonial," explaining: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Id*. at p. 822.)

Here, Williams was suffering from a substantial head wound, which required immediate medical attention. Furthermore, one of the perpetrators was still outside of the house where Williams called 911. Williams stated to the 911 operator, "one of the guys who did it, he, he, he's been tryin[*sic*] to follow me. He's right, he's right outside of here." Thus, at the time of the 911 call, there was still danger of further violence. Immediate police assistance was critical for the safety of Williams and the residents, as well as the apprehension of the nearby perpetrator. Accordingly, Williams' statements were nontestimonial because he described an ongoing emergency.

III

*Section 654*

The jury convicted Truillo of first degree robbery (§ 211) and, on an aiding and abetting theory, assault with a deadly weapon (§ 245, subd. (a)(1)). The court sentenced Truillo to a six-year prison term for the robbery and a consecutive one-year term for the assault with a deadly weapon.

Truillo contends the imposition of a consecutive term for assault with a deadly weapon offense charged in count 3 violated section 654. Specifically, Truillo contends,

10

"there was no substantial evidence of a divided intent to assault and rob Williams."  We agree.

Section 654, subdivision (a) provides in part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Section 654 prohibits multiple sentences where a single act violates more than one statute or where the defendant commits different acts that violate different statutes but the acts comprise an indivisible course of conduct with a single intent and objective.  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19-20, disapproved in part on another ground as stated in *People v. Correa* (2012) 54 Cal.4th 331, 334.)  "Whether a defendant held multiple criminal objectives presents a question of fact, and the trial court's finding on that question will be upheld if it is supported by substantial evidence."  (*People v. Watts* (1999) 76 Cal.App.4th 1250, 1265.)

If one offense is the means of perpetrating another, section 654 prohibits multiple sentences.  (*Neal v. State of California*, *supra*, 55 Cal.2d at pp. 19-20.)  Significantly, "one who uses a deadly weapon in the commission of first degree robbery simultaneously assaults the victim with such weapon but clearly may not be punished for both the robbery and assault with a deadly weapon."  (*People v. Beamon* (1973) 8 Cal.3d 625, 637.)

Here, there is no evidence of an objective behind the assault other than to facilitate the robbery.  The assault upon Williams was in the course of and part of the means of

11

perpetrating the robbery. The sequence of events supports this conclusion. After breaking in, Truillo and his accomplices struck Williams with a hammer, forced him to the floor, and then completed the robbery. Their primary objective was to rob Williams and the assault was an incidental method of accomplishing that objective.

The People contend multiple punishments were appropriate because striking Williams with a hammer constituted excessive or gratuitous violence that was not necessary to complete the robbery. In support of this argument, the People rely on *People v. Nguyen* (1988) 204 Cal.App.3d 181 and *People v. Cleveland* (2001) 87 Cal.App.4th 263. However, these cases are distinguishable from the present case. In *Nguyen*, the perpetrator first stole the victim's valuables, then forced the unresisting victim to the floor and shot him. (*People v. Nguyen*, *supra*, at p. 190.) There, the robbery was already completed when the violent act occurred. (*Ibid.*) Thus, the court concluded the violence was gratuitous and therefore divisible from the robbery. (*Ibid.*) Unlike *Nguyen*, the assault here occurred before the robbery was completed. Even after being struck with the hammer, Williams continued to resist the perpetrators' attempts to force him to the floor. Williams only submitted to the perpetrators' demands when threatened with a gun. Thus, the perpetrators struck Williams with the hammer to facilitate the robbery.

In *Cleveland*, the defendant repeatedly hit the unresisting victim with a two-by-four board until the board broke and left the victim unconscious. (*People v. Cleveland*, *supra*, 87 Cal.App.4th at p. 272.) There, the court determined the amount of force used went well beyond what was necessary to commit the robbery and could not be viewed as

12

merely incidental to the robbery. (*Id.* at pp. 271-272.) In contrast, here, the force used was not as great. As noted, the victim continued to resist after being struck by the hammer and never lost consciousness. Accordingly, we cannot conclude the assault was gratuitous.

Because there is no evidence indicating multiple objectives, section 654 bars multiple punishments for the robbery and assault with a deadly weapon convictions. (*People v. Beamon*, *supra*, 8 Cal.3d at p. 637.) Accordingly, the consecutive one-year sentence for the assault with a deadly weapon conviction must be stayed.

IV

*Abstract of Judgment*

Truillo asserts, and the People concede, the abstract of judgment should be amended to reflect Truillo's conviction for violating sections 211 and 212.5, subdivision (a) (first degree robbery). Truillo's abstract of judgment incorrectly states Truillo was convicted of first degree robbery under sections 211 and 215.5, subdivision (a). However, section 215.5, subdivision (a), does not exist. The jury convicted Truillo of robbery (§ 211) and made a special finding he committed that crime in an inhabited residence within the meaning of section 212.5, subdivision (a). Accordingly, Truillo's abstract of judgment must be corrected to show his convictions for violating sections 211 and 212.5, subdivision (a) (first degree robbery).

DISPOSITION

The superior court is directed to modify the judgment to stay the imposition of the consecutive one-year sentence for the assault with deadly weapon conviction under

13

section 654 and to amend the abstract of judgment to reflect this modification.  The court is further directed to amend the abstract of judgment to replace the reference to section 215.5, subdivision (a), with section 212.5, subdivision (a), and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


MCCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


MCINTYRE, J.