Filed 11/6/23  P. v. Riley CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AARON RILEY, <br><br> Defendant and Appellant. | D081531 <br><br><br> (Super. Ct. No. SCE412255) |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Andrew Mestman, and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Aaron Riley of battery committed by gassing (Pen. Code,[1] § 243.9, subd. (a); count 2); resisting an executive officer (§ 69; count 3); and exhibiting a deadly weapon other than a firearm (§ 417, subd. (a)(1); count 4).  The jury found Riley not guilty of vandalism over $400 (§ 594, subd. (a)(b)(1); count 5).  Additionally, the trial court declared a mistrial on and granted the prosecution's motion to dismiss count 1 (making a criminal threat; § 422) after the jury could not reach a verdict on that count.

The court sentenced Riley to prison for the low term of two years on count 2, a concurrent midterm of two years on count 3, and time served for count 4.

Riley appeals, contending the court erred by failing to stay his sentence for either count 2 or 3 under section 654.  We are not persuaded; thus, we affirm the judgment.

## FACTUAL BACKGROUND[2]

On May 9, 2022, Aaron L. was on his way to pick up his stepson from school with his one-year-old daughter who was asleep in her wagon stroller. Riley, a local unhoused man, approached them and placed a crushed water bottle on the canopy of the stroller.  Riley mumbled a few unintelligible things, and Aaron responded, "No, thank you," and tried to hand the crushed water bottle back to Riley.

Aaron walked away and even increased his pace, but Riley kept following him.  Riley grabbed a pair of pliers from his waist area, and while motioning towards Aaron's beard area with the pliers, Riley said, "You need a

---

[1]    Statutory references are to the Penal Code unless otherwise specified.

[2]    Like the parties here, we shall omit the facts involving counts 1 and 5 because count 1 was dismissed and Riley was acquitted on count 5.

2

haircut. I can cut it for you." Aaron leaned back to avoid Riley. Riley was within an arm's reach of Aaron.

Riley continued to follow Aaron despite Aaron's efforts to move quickly away from him. Aaron was afraid for the safety of his daughter. As Aaron and Riley were passing an auto shop, Riley pulled out a glass shard. Riley then held the glass shard close to Aaron's throat. Aaron could not really understand what Riley was saying because he was mumbling.

Aaron decided to go to an AM/PM store where his daughter's mother worked. Riley followed him, and the manager told Aaron that they had seen Riley before. Some of the AM/PM employees went outside to get Riley to leave. Aaron called law enforcement, and they responded.

San Diego Sheriff Deputy Melanie Olmos responded to the scene and detained Riley. She recovered a pair of pliers beside Riley and a sharp piece of glass in his pants pocket. Riley was arrested and transported to jail by Deputy Dominic Banaga.

At the jail, Banaga asked Riley to sit down so he could be booked. Riley would not cooperate, so the deputy had to force him down. Riley threatened to spit on Banaga if Banaga touched him again. Riley continued to stand about three times, disobeying Banaga's commands. Riley also leaned forward toward Banaga, closing the gap between them, which Banaga considered pre-assaultive behavior that might indicate Riley would try to spit or headbutt him. Banaga thus pushed Riley into the chair, but Riley stood back up. Riley warned Banaga, "If you touch me again, I will spit on you."

After standing multiple times, Riley eventually slid out of his chair down onto the ground, trying to squirm away from Banaga. When Riley was on the ground on his back, he spit on Banaga's face as Banaga stood above him. Banaga was afraid that this transfer of bodily fluids could be harmful to

him by spreading bacteria and possible disease.  So, Banaga put on sunglasses to prevent the spit from going into his eyes.  Banaga also placed a spit sock over Riley's head to prevent him from spitting again.

Riley then started to kick Banaga in an effort to squirm away under a table.[3]  Riley tried to trip Banaga or kick Banaga's leg as the deputy was trying to get Riley's property bag.  Both Riley and Banaga were moving around so Banaga had to apply pressure to Riley's hips so he would stop moving.  Banaga asked for assistance from other deputies.

While waiting for deputies from the jail to assist, Banaga was able to put his knee on Riley's hip to keep him from moving and squirming away.[4]  Riley tried to reposition himself by pushing off the walls with his legs.

Olmos returned to the jail to assist Banaga in transporting Riley.  Deputies from the jail arrived with a medical gurney, which is used for the officer's and arrestee's safety when an arrestee is not compliant.  Banaga and another deputy put another spit sock on Riley.  As Banaga was putting Riley on the gurney, Riley grabbed him by the ankle, squeezed as hard as he could, and said he would "murder" the deputy.

As they were moving to the jail sally port, Riley continued to resist Banaga and Olmos as they put wraps or straps on him to secure him to the gurney so they could transport Riley to the hospital to be examined for an old cut on his thumb.  While on the gurney, Riley tried to kick Banaga and the other deputies.  Olmos testified that Riley was still actively trying to hit her and the other deputies.  Even though he had a spit sock on, Riley spit on

_____

[3]    A video of the interaction between Riley and Banaga in the breathalyzer room at the jail was played for the jury.

[4]    A video taken from the forensic room at the jail was played for the jury.

Banaga again, so they put another spit sock on Riley's head.  Riley said, "Fuck spitting on you.  I'm going to kick you in the neck."

Deputies transported Riley from the jail to the hospital. During transport, Riley continued spitting at the deputies.  Despite having two spit masks, the spittle or mist from the spit sprayed through the masks.

DISCUSSION

Here, Riley contends his sentence for either count 2 or count 3 should be stayed under section 654 rather than run concurrently because he had a single objective in committing both offenses.

Riley did not raise an objection under section 654 at the sentencing hearing, but it is settled that questions involving the applicability of section 654 can be raised for the first time on appeal.  (*People v. Hester* (2000) 22 Cal.4th 290, 295.)  The People do not argue otherwise.

Section 654 precludes multiple punishments for a single act or omission, or an indivisible course of conduct.  (*People v. Deloza* (1998) 18 Cal.4th 585, 591.)  It provides in relevant part:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  The purpose of the statute is to ensure that punishment is commensurate with a defendant's culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 552 (*Perez*).)

To determine whether a course of conduct that violates more than one statute is subject to section 654's proscription on multiple punishments, the court must assess the intent and objective of the actor.  " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' "  (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)  "On the other hand, if the evidence discloses that a

defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct. [Citations.]" (*Perez, supra*, 23 Cal.3d at pp. 551–552, fn. omitted.)

" 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective. [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

Here, Riley argues that he had only one criminal objective in spitting at Banaga (count 2) and then trying to kick him (count 3): To keep Banaga from touching him and forcing him to sit. Riley also notes the spitting and kicking occurred within a matter of minutes. Accordingly, Riley maintains that substantial evidence does not support the court's finding that section 654 did not apply. We disagree.

In the instant action, the trial court reasonably determined that Riley had separate intents and objectives in committing the resisting and battery offenses. Riley's intent with respect to the resisting offense was to prevent Banaga from controlling him when he was supposed to sit in the booking area and when the deputies were trying to secure him on the gurney for transport. He harbored a separate intent and objective when spitting at the deputy— anger or retaliation against Banaga for touching him. Riley's intent was

6

evident when he specifically warned Banaga, "If you touch me again, I will spit on you." Riley also seemed to aim his spitting at Banaga even though other deputies were also trying to put him on the gurney.

Additionally, Riley's act of spitting on Banaga's face was not essential to the commission of the resisting offense. It was a gratuitous, independent act of violence. The act of spitting was not necessary to his aim to free himself. "[A]t some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and a more sinister goal than mere successful commission of the original crime." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191.) This comports with the purpose underlying section 654, which is " 'to insure that a defendant's punishment will be commensurate with his culpability.' " (*Nguyen*, at p. 191; see *People v. Correa* (2012) 54 Cal.4th 331, 341.) As such, the court did not err.

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


KELETY, J.

7