Filed 6/30/22  P. v. Trammel CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIRST APPELLATE DISTRICT

# DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>TERRELL TRAMMEL,<br><br>      Defendant and Appellant. | A161381<br><br>(San Francisco City & County Super Ct. Nos., SCN 232509, CT20000300 & CT20004019) |

Defendant Terrell Trammel appeals from the trial court's sentencing order, imposing an aggregate 12-year prison term based on numerous convictions arising out of his violent relationship with his former girlfriend, M.T.  Trammel contends on appeal that the trial court erred in failing to stay punishment for certain counts under Penal Code[1] section 654 and by improperly imposing a $500 domestic violence fund fee under section 1203.097.  He also asserts that recent legislative changes require the matter to be remanded for resentencing.  We strike the fee and also conclude that the trial court erred in failing to stay punishment for two of Trammel's convictions under section 654.  The matter must be remanded for

_____

[1] All statutory references are to the Penal Code unless otherwise specified.

resentencing for these purposes and to address applicable legislative changes enacted during the pendency of this appeal. The trial court may also consider Trammel's additional section 654 arguments during the resentencing process.

## I. FACTUAL AND PROCEDURAL BACKGROUND

M.T. dated Trammel for 5 years. In June 2017, the two had an argument and, according to M.T., Trammel "plugged in an iron and burnt me on my arm with it and beat my knees several times with it." M.T. took photographs of her injuries but did not report the abuse or leave Trammel because she was scared. After an argument on October 18, 2019, Trammel punched M.T. repeatedly in the knee with his fists. He used "[a] lot" of force and her pain was "about a 10" on a scale of one to ten. M.T. again documented the injury.

Several days later, M.T. was walking home—after apparently having been gone "too long"—when she felt something hit her head, turned around, and saw Trammel. They started fighting but then Trammel ran off. As M.T. gathered her personal items and resumed her walk home, Trammel returned in a car. He opened the car door, and "drug" her inside. She did not go willingly and told him to leave her alone. The two continued to fight, with Trammel repeatedly punching her in the face. After driving for approximately 10 minutes, they parked, and M.T. tried to run away. Trammel chased her, pushed her down, and dragged her a short distance. M.T. then got up and walked toward the car. Trammel tried to make her get into the car, but she did not want to, and, as they fought, she fell, and he dragged her through the dirt and gravel. When people started coming out of a nearby house, Trammel stopped, but he made her stay with him for a day before she was able to go home.

2

Two days later, her knees had not stopped bleeding, so M.T. went to the hospital. However, Trammel was with her, so she reported she was injured in a fall. M.T. took photographs of her injuries right after they happened and after she returned from the hospital. M.T. finally reported the abuse in November 2019.

Thereafter, on January 5, 2020, at approximately 6:00 or 7:00 p.m., M.T. was at home when Trammel called her on the telephone, yelling that she owed him $1500 for a car she had sold for him in 2018. He stated he was on his way to M.T.'s house to get the money and he further "said he was going to beat [M.T.] up and if [she] didn't give him the money, he was going to kill [her]." He had demanded the money "[a] lot of times." Trammel knocked on M.T.'s front door at approximately 9:30 to 10:00 p.m. Her step-father, M.B., opened the door, saw Trammel, and immediately closed and locked the door. In addition to M.T., her mother, step-father, sister, and son were in the house. According to M.T.'s mother, L.B., Trammel was "outside of my home very loudly threatening to break in and harm, I guess, us, the people inside." Specifically, he stated: " 'Open the door. Open the door. Let me in before I spray you up' and 'I'm going to tear your car up. I'm coming in.' "[2]

Trammel made "[a] lot" of kicks to the front door, eventually kicking the lock in and knocking the door off its hinges. M.T. called 911 and then left her bedroom and saw Trammel arguing with her mother at the top of the stairs. According to M.T.'s mother, Trammel sated: " 'Move out the way. You know that bitch owe me some money. I'm going to kill her. She know what I do to her. She know what I'll do to her' and '[y]ou know what I'll do to

_____

[2] M.T.'s mother testified that " 'spray you up' " was a "street word" for shooting up your house.

you.' " Trammel eventually left the house, and M.T.'s father also called 911. Officers apprehended Trammel as he attempted to flee the scene.

Based on these events, the San Francisco District Attorney filed a third amended information in August 2020, charging Trammel with felony first-degree burglary with persons present (§ 459, count I), felony criminal threats as to M.T., L.B., and M.B. (§ 422, counts II, III, and IV), and misdemeanor vandalism (§ 594, subd, (b)(2)(A), count V), all with respect to the January 2020 incident. Trammel was charged with felony assault with a deadly or dangerous weapon, a hot iron (§ 245, subd. (a)(1), count VI), felony domestic violence (§273.5, subd. (a), count VII), and felony assault with force likely to cause great bodily injury (§ 245, subd. (a)(4), count VIII), based on the June 2017 incident. Charges related to the assault on October 18, 2019, included felony domestic violence (§273.5, subd. (a), count IX) and felony assault with force likely to cause great bodily injury (§ 245, subd. (a)(4), count X). Finally, with respect to the incident on October 22, 2019, the third amended information charged Trammel with felony kidnapping (§ 207, subd. (a), count XI), felony domestic violence (§273.5, subd. (a), count XII), and felony assault with force likely to cause great bodily injury (§ 245, subd. (a)(4), count XIII). Counts VII and VIII were enhanced by allegations that Trammel personally used a deadly and dangerous weapon within the meaning of section 12022, subdivision (b)(1).

On August 27, 2020, a jury found Trammel guilty of burglary (count I), making a criminal threat as to M.T. (count II), vandalism (count V), three counts of domestic violence (counts VII, IX, and XII), and kidnapping (count XI). The jury found Trammel not guilty of making criminal threats as to L.B. and M.B. (counts III and IV). The jury also found Trammel not guilty of the three charged assaults by force likely to cause great bodily injury (counts

4

VIII, X, and XIII), but found him guilty of the lesser included offense of misdemeanor assault (§ 240) on each charge. The court declared a mistrial on the charge of assault with a dangerous or deadly weapon (count VI) as the jury was unable to reach a verdict.

Trammel was sentenced to a total of 12 years in state prison after hearing on November 6, 2020. Specifically, the trial court ordered: the upper term of eight years for the principal count, kidnapping (count XI); a consecutive 16 months for burglary (count I), a consecutive eight months for making criminal threats (count II); and a consecutive 2 years for the June 2017 domestic violence conviction (count VII), one year for the conviction, itself, and an additional year on the attached arming enhancement. The trial court imposed concurrent three-year terms for the remaining domestic violence convictions (counts IX and XII) and concurrent time-served sentences for the misdemeanors (counts V, VIII, X. and XIII). Among the fine and fees imposed, Trammel was ordered to pay a domestic violence fund fee of $500 pursuant to section 1203.097. Trammel timely appealed.

## II. DISCUSSION

### A. Section 654 Issues

Subdivision (a) of section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."[3] Thus, in California "a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct." (*People v.*

---

[3] When Trammel was sentenced in November 2020, section 654 required the trial court to impose the punishment under the provision that provided for the longest potential term of imprisonment. (See Stats. 1997, ch. 410, §1.) We discuss the impact of this legislative change below.

5

*Reed* (2006) 38 Cal.4th 1224, 1226; see also *People v. Mesa* (2012) 54 Cal.4th 191, 195; *People v. Saffle* (1992) 4 Cal.App.4th 434, 438 [section 654 bars multiple punishments "when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction"].)  The purpose of this rule is "to ensure that a defendant's punishment will be commensurate with [his or her] culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341.) " 'A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective.' " (*Ibid.*)

" ' " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 354 (*Jackson*).)  "If, on the other hand, [the] defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)

"Intent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*Jackson*, *supra*, 1 Cal.5th at p. 354.)  Thus, " 'the law gives the trial court broad latitude in making [a section 654] determination," and its findings "must be upheld on appeal if there is any substantial evidence to support them.' " (*People v. Deegan* (2016) 247 Cal.App.4th 532, 545, fn. 4 (*Deegan*).)  Under well-settled rules, we must

" ' " 'view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*Ibid.*)  Moreover, "[w]hen a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)  Here, Trammel cites four errors under section 654 in the trial court's sentencing decision, two of which the Attorney General concedes.

First, we consider Trammel's claim that the trial court erred under section 654 by imposing separate punishment for both domestic violence under count VII and simple assault under count VIII.  Both counts related to the June 2017 incident in which Trammel burned M.T. with an iron and hit her knees with the iron because M.T. had failed to lay out Trammel's clothes for him that day.  There is no indication in the record that this was a divisible event.  Rather, in her closing argument, the prosecutor appeared to treat the burn and the beating as part of a single incident of domestic violence.  And the probation report treats it similarly.  Indeed, defense counsel argued at sentencing that there was a section 654 issue here, and the prosecutor did not disagree.  But the court did not address the issue.  The Attorney General concedes that section 654 precludes separate punishment with respect to these two counts.  We agree.

It is also evident—and the Attorney General concedes—that section 654 precludes punishment for both domestic violence under count IX and simple assault under count X with respect to the October 18, 2019 incident in which Trammel repeatedly struck M.T. in the knees with his fists.  As Trammel argues, there is no indication in the record that this was anything

other than a single incident of domestic violence. And, again, defense counsel raised the issue at sentencing, the prosecutor did not disagree, and the court did not address the issue. Accordingly, separate punishment with respect to these two counts was also improper.[4]

### B. Domestic Violence Fund Fee

As stated above, Trammel was ordered to pay a domestic violence fund fee of $500 pursuant to section 1203.097. As the Attorney General concedes, this fee was improperly imposed and must be stricken. Subdivision (a) of section 1203.097 provides in relevant part: "If a person *is granted probation* for a crime in which the victim is [a designated domestic violence victim], the terms of probation shall include all of the following: . . . . A minimum payment by the defendant of a fee of five hundred dollars ($500) to be disbursed as specified . . . ." (Italics added.) Since, by its plain terms, the statute applies only when a defendant is placed on probation, it was not appropriate in this case, where Trammel was committed to state prison.

### C. Legislative Changes

Finally, Trammel points to three recent legislative changes that require remand in this case. As mentioned above, effective January 1, 2022, Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, §1) amended section 654 to provide that an act or omission punishable in different ways by different provisions of law may be punished under any such

---

[4] The Attorney General suggests that we may want to resolve Trammel's other two claims under section 654 for "the guidance of the court and parties upon remand and resentencing." We decline to do so. The sentencing decision is this case was complex given the number and variety of the offenses. And the legislative changes we discuss below may impact that decision in a variety of ways. Under the circumstances, the outstanding section 654 issues may well become moot. If they do not, we believe the trial court should address them first in the context of its resentencing decision.

provision (as opposed to the provision that provided for the longest potential term of imprisonment). The Attorney General concedes, and we concur, that this ameliorative change in the law applies retroactively to Trammel's case because it is not yet final. (See *People v. Sek* (2022) 74 Cal.App.5th 657, 673–674 [finding Assembly Bill 518 retroactive].) Similarly, the Attorney General concedes, and we agree, that the changes to the Penal Code enacted by Senate Bill 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) apply retroactively to Trammel's case. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039 [finding retroactive Senate Bill No. 567's amendment to section 1170, former subdivision (b) making the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist]; see also *People v. Jones* (2022) 79 Cal.App.5th 37, 44 ["Senate Bill 567 also added a provision that requires the court to impose the low term if the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, 'unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice.' "].)

We must remand this case so that the trial court can correct the errors under section 654 that we have identified. Under such circumstances, the trial court must conduct a full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) This process will necessarily require the trial court to apply "the law in effect at the time of that resentencing." (*People v. Walker* (2021) 67 Cal.App.5th 198, 205.) Thus, any applicable legislative changes can be considered by the trial court on remand.[5]

---

[5] We note that there is a discrepancy in this case with respect to the restitution fines imposed pursuant to sections 1202.4 and 1202.45. Both the minute orders and the abstract of judgment set these fines at $300. However,

9

### III.  DISPOSITION

The $500 domestic violence fund fee imposed in this case is stricken and the matter is remanded to the trial court for resentencing in accordance with this opinion.  In all other respects, the convictions are affirmed.

---

the trial court appears to have imposed fines of $2,200.  The trial court should also address this issue on remand.

WISS, J.[*]

WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A161381

---

[*] Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.